**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ramon SPECTOR and Charles T. Scott,
Defendants-Appellants.**

No. 13905.

United States Court of Appeals
Seventh Circuit.

Dec. 27, 1963.

**346**

George F. Callaghan, Anna R. Lavin, Chicago, Ill., for appellant.

Frank E. McDonald, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., James P. O'Brien, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before DUFFY, SCHNACKENBERG and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Ramon Spector and Charles T. Scott were named as principal defendants in a nine-count indictment which was returned July 28, 1959. They were charged in count one with conspiracy, under the general conspiracy statute, 18 U.S.C. § 371, to violate the provisions of 18 U.S.C. § 1006 (defrauding federal credit institutions). In counts two through nine Spector and two other persons, James W. Jacobs and Marvin Starr, were charged with violating 18 U.S.C. § 1010 (making false statements to the Federal Housing Administration).

Spector and Jacobs were named as defendants in four of the substantive counts. Spector and Starr were joined in two counts and all three were joined in the remaining two counts.

Before trial Spector moved to sever count one from the substantive counts. Starr made a similar motion. The motions were denied. At a later date, Starr renewed his motion. It was granted. Subsequently, the charges were dismissed against Starr because of his death.

Spector, Scott, and Jacobs were tried before a jury in May, 1962. All were found guilty. Spector and Scott appeal from the judgments of conviction.

This appeal presents many issues. Only three need be discussed: (1) whether the trial judge in effect amended the indictment by narrowing the duration of the alleged conspiracy charged in count one, (2) whether the allegations of that count, on proof, would sustain a conviction, and (3) whether there was reversible error in not granting a severance of count one from the remaining counts.

If defendants' contentions on the first two issues could be sustained, a reversal without remand for a new trial would be in order. We find, however, that the district court did not err in its rulings on these issues. Therefore, we must consider the severance question. On this question, we believe the district court erred and that the judgments must be reversed for a retrial.

**I.**

■ Count one of the indictment charged a conspiracy between Spector and Scott beginning in May, 1956, and continuing into November, 1956. The essence of the charge was that by engaging in certain manipulations relating to construction loans, Scott, an employee of Republic Savings and Loan Association, conspired with Spector, the owner of Su Lite, a construction company, to make false entries in the books and records of Republic, whose accounts were insured by the Federal Savings and Loan Insurance Corporation, whereby Scott would participate in the profits of the transactions.

Defendants moved to dismiss count one because section 1006 of the Criminal Code was not amended until July 28, 1956, to include officers, agents or em-

ployees of any institution the accounts of which were insured by the Federal Savings and Loan Insurance Corporation.[1] The district court denied the motion; however, it limited the government's proof to July 28, 1956, the effective date of the amendment and dates thereafter.

Defendants contend that the court's ruling effected a substantial change in the indictment. They maintain that a court cannot by direct or indirect means amend an indictment. In support of that proposition they cite Ex Parte Bain, 121 U.S. 1, 7, 7 S.Ct. 781, 30 L.Ed. 849 (1886), Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), and Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). In Bain, the indictment charged an officer of a national bank with making false statements in a bank report with intent to deceive the Comptroller of Currency and the agent appointed to examine the affairs of the association. The Court struck out the words "Comptroller of Currency and" from the indictment as surplusage and allowed a conviction of the defendant without proving an intent to deceive the Comptroller. The Court held that this was a substantial change in the indictment because "it is not impossible nor very improbable that the grand jury looked mainly to that officer [the Comptroller] as the party [the defendant] intended to deceive." The Court held that when these words were struck the indictment did not charge what the grand jury intended; and, therefore, the sentence was void.

In Stirone, the Court reversed a conviction under the Hobbs Act because the district judge erroneously instructed the jury that it could base its verdict upon a finding that exportation of steel caused an interference with interstate commerce whereas the indictment charged only an interference with sand imports.

In Russell, it was held that deficiencies in the indictment could not be cured by a bill of particulars.

■ The import of these cases is that a charge in an indictment cannot be broadened, whether by a change in the wording of the indictment, a bill of particulars, or an instruction to the jury. This is made clear by the Court in Stirone when it said, "Ever since Ex Parte Bain * * * it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself."

In the instant case the charge in the indictment was not broadened—it was limited. The limitation coincided with the effective date of the amendment of section 1006 which made the alleged conduct of defendants, if proved, a violation of the statute.

There is an essential difference between a broadening of the charge to embrace conduct which the grand jury did not incorporate in the indictment and limiting the charge to excise from the indictment conduct that describes no offense. After the limitation, if the remaining allegations of the indictment charge the commission of the crime, there can be no prejudice to the defendant. In fact, prejudice would lie in a failure to limit.

This view is in accord with Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927). The indictment charged, in addition to various statutory violations, violation of a treaty of the United States. The treaty, however, created no offense against the United States. The Court said:

"The validity of the indictment is attacked, first, because it charges that the conspiracy was to violate the treaty, although the treaty creates no offense against the law of the United States. This is true, but that part of the indictment is merely

---

1. Before the amendment the statute covered a number of other United States corporations and agencies such as the

Federal Deposit Insurance Corporation and Farm Credit Administration.

\* \* \* The trial court took this view. But it is contended that this surplusage and may be rejected. is to amend the indictment and comes within the inhibition of the principle of Ex parte Bain. \* \* \* That decision condemns the striking out of words from an indictment. The action here complained of is merely a judicial holding that a useless averment is innocuous and may be ignored." (273 U.S. at 602, 47 S.Ct. at 534, 71 L.Ed. 793.)

We hold that the district court did not err in limiting the government's proof to events occurring from July 28, 1956 through November, 1956.

## II.

■ Defendants contend that the charge of conspiracy to commit an act, not a crime at the time of the agreement, will not sustain the conviction. They argue that a course of conduct not illegal until the date of the amendment of section 1006 on July 28, 1956, but which continued beyond that date, cannot support a finding that defendants intended to violate the statute.

United States v. Postma, 242 F.2d 488 (2d Cir. 1957) presented an analogous situation in that a conspiracy was charged to have begun in June, 1951, but the jury found because of a failure of proof that the conspiracy did not begin until November, 1952. The court held that there was no fatal variance between the charge and the proof.

We hold that even though Spector and Scott may have embarked upon a course of conduct not illegal before the statute was amended, similar conduct after the amendment was not immunized from the sanctions of the statute.

Count one alleged that Su Lite Distributing, Inc., engaged in the business of remodeling homes and that Spector was its principal owner and president; that Spector induced homeowners to contract with Su Lite to make home improvements and that the company agreed to obtain loans for the homeowners covering not only the construction work but also their existing debts, thereby consolidating all the debts owed by the homeowners into one obligation; that Su Lite had the homeowners sign duplicate loan agreements; that one set was submitted to Republic and the other to another financial institution, each set ostensibly to pay for the same construction work, although the total proceeds of the two loans were actually used for the dual purpose of home improvement and debt consolidation.

It was further alleged that Spector would conceal from the officers of the two financial institutions the facts regarding the existing debts of the homeowners and that duplicate loans were being obtained.

It was further alleged that Spector and Scott conspired to violate section 1006 of the Criminal Code;[2] that Scott would approve certain loans to the homeowner-customers of Su Lite and would cause his superior officers to approve the loans by concealing from them the conduct of Spector and by making false entries in the books and records of Republic. As a further object of the conspiracy, it was alleged that Scott with intent to defraud Republic would participate in the money, profits, and benefits of the transactions between Su Lite and Republic.

■ Defendants argue there was no charge that they conspired that Scott

2. 18 U.S.C. § 1006 reads in pertinent part: "Whoever, being an \* \* \* employee of \* \* \* any \* \* \* savings and loan \* \* \* association \* \* \* or any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation \* \* \* with intent to defraud any such institution \* \* \* or to deceive any officer \* \* \* of any such institution \* \* \* makes any false entry \* \* \* or, with intent to defraud the United States or any \* \* \* institution \* \* \* referred to in this section, participates \* \* \* in \* \* \* any money, profit, \* \* \* or benefits through any transaction \* \* \* of any \* \* \* institution \* \* \* shall be fined not more than $10,000 or imprisoned not more than five years, or both."

would make false entries in the books and records of Republic with intent to defraud the institution or to deceive its officers, necessary elements in the indictment.

We disagree. Reading the count as a whole it is obvious that the foregoing arguments have no merit.

In support of their contention, defendants say that the allegation in the indictment that Scott would approve loans to Su Lite customers "by falsely concealing from the officers of Republic the true facts of the conduct and practice of Su Lite and Ramon Spector" is superfluous because the statute makes no provision for false concealment.

We agree with the Fifth Circuit in United States v. Meyer, 266 F.2d 747, 754 (5th Cir. 1959), where a similar contention was made. There the court said:

"The appellees insist, however, that the averments of the count are otherwise insufficient to charge a conspiracy to violate Section 1006. The prohibition of false entries by that section is in broad and comprehensive terms. * * * Knowingly and wilfully representing that a proposed construction loan was legitimate by *failing* to disclose on a loan application to one of the financial institutions named in Section 1006 an unrecorded mortgage from the applicant to a corporation owned and controlled by the defendants, or by giving a negative answer to some questionnaire, when made with the

requisite intent to defraud the lending institution or to deceive the auditors and examiners or a Government agency, would clearly constitute a false entry in a report or statement to the institution."

■ Defendants also contend that count one is defective because it charges that only Scott would participate in the profits and benefits of the transactions between Su Lite and Republic. They argue that the word "participate" when considered in the context of section 1006 requires participation by multiple actors, and therefore, an indictment which charges that only one person participated is invalid.

The argument is specious. The word "participate" when read in the context of the statute makes it a crime for one who is connected with a lending institution, the accounts of which are insured by a federal agency, to benefit pecuniarily and fraudulently through any transaction of the institution.

### III.

■ The next question is whether the joinder of the conspiracy count with the substantive counts violates Rule 8 of the Federal Rules of Criminal Procedure.[3]

Only Spector and Scott were named in the conspiracy count. Jacobs and Starr were joined with Spector in the remaining counts. Those counts charge substantive violations of section 1010 of the Criminal Code,[4] which prohibits the mak-

---

3. Rule 8 of the Federal Rules of Criminal Procedure reads:
"JOINDER OF OFFENSES AND OF DEFENDANTS.
"(a) *Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
"(b) *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they

are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

4. 18 U.S.C. § 1010 reads in pertinent part: "Whoever, for the purpose of obtaining any loan * * * from any person * * * with the intent that such loan * * * shall be offered to or accepted by the Federal Housing Administration for insurance, * * * or for the purpose of influencing in any way the action

ing of false statements in any instrument pertaining to federal housing transactions. Scott is a complete stranger to those charges; the only link is that Spector is named as a defendant in all nine counts. The alleged conspiracy of section 1006 ended in November, 1956, and the first substantive offense under section 1010 was alleged to have occurred December 21, 1956.

Proof of the conspiracy would not cover the events relating to the charges under section 1010; similarly, the proof of the substantive charges would not relate to the conspiracy. It is clear, then, that the counts were not based on the same acts or transactions. Nor were they based on two or more transactions connected together or constituting parts of a common plan or scheme. The acts concerning the alleged conspiracy ended before those forming the substantive offenses began.

The only clause in rule 8(a) which might permit a joinder is that which refers to the same or similar offenses. It could be argued that sections 1006 and 1010 are similar because they pertain to false statements and forged instruments made to obtain loans from lending institutions whose accounts are insured by federal agencies. But a joinder of count one with the remaining counts on this basis runs afoul of rule 8(b) which permits joinder of two or more defendants in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

Scott is not charged with having participated in the acts or transactions alleged in counts two through nine, nor are Jacobs and Starr charged with violating the substantive statute underlying the conspiracy count.

In McElroy v. United States, 164 U.S. 76, 79, 17 S.Ct. 31, 32, 41 L.Ed. 355

(1896), the Supreme Court of the United States said:

"The several charges in the four indictments were not against the same persons, nor were they for the same act or transaction, nor for two or more acts or transactions connected together; and in our opinion they were not for two or more acts or transactions of the same class of crimes or offenses which might be properly joined, because they were substantive offences, separate and distinct, complete in themselves and independent of each other, committed at different times and not provable by the same evidence.

\* \* \* \* \* \*

"While the general rule is that counts for several felonies of the same general nature, requiring the same mode of trial and punishment, may be joined in the same indictment, subject to the power of the court to quash the indictment or to compel an election, such joinder cannot be sustained where the parties are not the same and where the offences are in no wise parts of the same transaction and must depend upon evidence of a different state of facts as to each or some of them. It cannot be said in such case that all the defendants may not have been embarrassed or prejudiced in their defence, or that the attention of the jury may not have been distracted to their injury in passing upon distinct and independent transactions." (164 U.S. at 81, 17 S.Ct. at 33, 41 L. Ed. 355.)

In Ingram v. United States, 272 F.2d 567 (4th Cir.1959), Ingram was indicted and convicted in two cases of removing, concealing and possessing non-tax paid liquor. In one case, he was indicted with his wife, two persons named Gill, and one Hozel Duke for an offense arising out of events of March 21, 1959. In the

of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument,

paper, or document \* \* \* shall be fined not more than $5,000 or imprisoned not more than two years, or both."

other case, he was indicted with one Kirkpatrick and James Sadler under a similar charge arising out of events occurring on November 26, 1958. The Fourth Circuit held that there was a misjoinder. What the court said in that case is particularly appropriate to the situation here:

"Rule 8(b) specifically states when it is permissible to join defendants in a single indictment and trial. It provides that two or more defendants *may* be jointly charged if they are alleged to have participated in the same act or transaction. The necessary inference from this is that they *may not* be jointly indicted or tried in the absence of a common act or transaction. * * * But the joinder of defendants and offenses totally unconnected is prohibited by Rule 8(b). This is not a matter of discretion; both the statutory language and the decided cases make this clear.

"* * * In other words, where multiple defendants are charged with offenses in no way connected, and are tried together, they are prejudiced by that very fact, and the trial judge has no discretion to deny relief. * * *

"Many other cases point out that defendants charged with unrelated offenses may not be indicted and tried together, and it is only where there is a connection among all defendants that the decision of the trial judge on motions for severance or for a new trial is not to be interfered with in the absence of an abuse of discretion." (272 F.2d at 569.)

In conclusion, it is apparent in the instant case that there is no identity of defendants, of the character of the offenses, the allegations of fact, or of the time. Therefore, a severance should have been granted.

Defendants present issues which we need not discuss. Even if we agreed that there were other reversible errors, they would only furnish additional reasons for a remand for a new trial. Furthermore, the events and rulings upon which the claimed errors are based may not reoccur; therefore, resolution of these issues would be purely advisory.

The judgments of conviction are reversed and the cause is remanded for a new trial.