**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**William Oral WHITLOW, Defendant-Appellant.**

**No. 14551.**

United States Court of Appeals Seventh Circuit.

Dec. 23, 1964.

[redacted]

concealing and unlawfully having in their possession mail, articles and things contained therein, to-wit: one $1,000 Illinois State Toll Highway Commission Bond, Ser. #279323, and twenty $1,000 direct obligation serial notes of the Diocese of Buffalo, New York, Serial Nos. M1176 to M1195, inclusive, which had been stolen, taken and abstracted from and out of a mail receptacle which was an authorized depository for mail matter, knowing the same to have been stolen. From the judgment of conviction only the defendant, William Oral Whitlow, appeals.[1]

Prior to trial, the Whitlows filed their motion to suppress evidence alleged to have been unlawfully seized and for return of property. Also prior to trial, hearing was had on the motion, which the Court, on March 29, 1963, denied, except it ordered the return of $200, shown to be household money. United States v. Jordan et al., S.D.Ill., 216 F. Supp. 310.

■ The property described in the second count of the indictment and received in evidence at the trial was seized by officers from defendant's home in the execution of a search warrant. Among the grounds urged for reversal is that the warrant was issued upon an affidavit legally insufficient in that it did not show probable cause. We hold that it was insufficient, and that the Court erred in denying defendant's motion to suppress.

Defendant's motion to suppress was made pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure:

"Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained on the ground that * * * (4)

George F. Callaghan, Anna R. Lavin, Chicago, Ill., for defendant-appellant.

Edward R. Phelps, U. S. Atty., Richard E. Eagleton, Asst. U. S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CASTLE, SWYGERT and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Following a trial by jury, William Oral Whitlow and Phyllis Jean Whitlow, his wife, were convicted on Count 2 of an indictment which charged a violation of Title 18 U.S.C.A. § 1708, by receiving,

---

1. Count 1 of the indictment charged Dale Louis Jordan and Tony Howard O'Dell (also not involved on this appeal) with the theft of the property described in Count 2.

there was not probable cause for believing the existence of the grounds on which the warrant was issued * * *."

This rule is complementary to the Fourth Amendment of the United States Constitution, which provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Thus, the question for decision is whether the Commissioner from the facts of the affidavit could properly determine the existence of "probable cause" essential to the issuance of the search warrant. It may be pertinent in the beginning to be reminded of the seriousness of the question presented. In Sgro v. United States, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed.2d 260, the Court stated:

"The proceeding by search warrant is a drastic one. Its abuse led to the adoption of the Fourth Amendment, and this, together with legislation regulating the process should be liberally construed in favor of the individual. [Citing cases.]"

To the same effect, United States v. Lefkowitz et al., 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877. In Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159, the Court stated:

"Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough."

The prerogatives of the Commissioner in determining the existence of probable cause are discussed and pointedly noted in Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. The Court stated (page 486, 78 S.Ct. page 1250):

"The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime."

After pointing out the deficiencies in the complaint, the Court on the same page stated:

"We think these deficiencies could not be cured by the Commissioner's reliance upon a presumption that the complaint was made on the personal knowledge of the complaining officer."

The Court concluded its discussion on the following page, with the statement:

" * * * the issue of probable cause had to be determined by the Commissioner, and an adequate basis for such a finding had to appear on the face of the complaint."

The warrant under attack was issued by a United States Commissioner on the strength of an affidavit dated September 1, 1962, and signed by Donald L. Semlow, a United States Postal Inspector. The affidavit stated that Semlow "has good reason to believe and does believe that in and upon certain premises * * * known as Bill Whitlow residence * * * are now located * * *" (then follows a description of numerous items of property, including that described in the indictment, a part or all of $20,000 in currency and two diamond rings "obtained as a result of a felony in violation of the statutes of the United States in that the foregoing items were stolen from the mails of the United States").

The affidavit in support of Semlow's belief stated:

"The facts tending to establish the grounds of this application and the probable cause of affiant's belief that such facts exist are: an affidavit subscribed and sworn to by Dale L. Jordan, 3017 North Adams

Street, Peoria, Illinois, and an affidavit subscribed and sworn to by Thelma Joyce Harris, 518 Spring Street, Peoria, Illinois.

"Dale L. Jordan admits participation in the theft of the aforedescribed mail matter on 8-25-62 and identifies Tony O'Dell as an accomplice and states that all mail matter was taken and retained in the custody of Tony O'Dell. Thelma Joyce Harris states that on 8-25-62, Tony O'Dell woke her up and sat on the bed and threw a bundle of money three or four inches thick at her and that she saw some $100 bills that looked new. She stated that Tony O'Dell told her that Bill Whitlow's wife had gotten a big diamond ring for her part and that Bill Whitlow's wife got $3,000.00 in cash in addition to the ring for her part. She stated that Tony O'Dell also told her that Bill Whitlow got some money for his part."

The government in its effort to justify the issuance of the warrant relies heavily upon Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, and Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887. In its brief it states:

"Applying the clear holdings of Rugendorf and Jones, this Court must determine whether a substantial basis existed for the Commissioner to conclude that items of stolen mail matter were probably in the Whitlow residence."

In making such determination there must be added a third case, Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, decided June 15, 1964, which the government in its brief does not mention and which was decided subsequent to the District Court's denial of the motion to suppress.

In Jones, the essential point decided by the Court is that hearsay contained in the affidavit may, under the circumstances of that case, constitute the basis for a determination of probable cause. The deficiencies of the affidavit in the instant case are forcibly shown by a comparison of the allegations here with those in the affidavit in Jones.[2] The Court's résumé of the affidavit in that case follows:

"He swore that on the day before making the affidavit he had been given information, by one unnamed, that petitioner and another 'were involved in the illicit narcotic traffic' and 'kept a ready supply of heroin on hand' in the apartment [place to be searched.] He swore that his informant claimed to have purchased narcotics at the apartment [place to be searched] from petitioner and another 'on many occasions,' the last of which had been the day before the warrant was applied for. Didone swore that his informant 'has given information to the undersigned on previous occasion and which was correct,' that '[t]his same information' regarding petitioner had been given the narcotic squad by 'other sources of information' and that the petitioner and the other implicated by the informant had admitted being users of narcotics. On this basis Didone founded his oath that he believed 'that there is now illicit narcotic drugs being secreated [*sic*] in the above apartment by Cecil Jones.'"

The Court in reasoning that the affidavit was sufficient stated (page 271, 80 S.Ct. page 736):

"But there was substantial basis for him to conclude that narcotics were probably present in the apartment, and that is sufficient. It is not suggested that the Commissioner doubted Didone's word. Thus we may assume that Didone had the day before been told, by one who claimed to have bought narcotics there, that petitioner was selling narcotics in the

---

2. The affidavit in Jones was made by Thomas Didone, a detective. It is set forth in a footnote to the Court's opinion (page 267, 80 S.Ct. page 734).

apartment. Had that been all, it might not have been enough; but Didone swore to a basis for accepting the informant's story. The informant had previously given accurate information. His story was corroborated by other sources of information."

In Rugendorf, the Court reiterated, as it had held in Jones, that the hearsay in the affidavit, under the circumstances of the case, was sufficient. The main point of the decision in Rugendorf was that the government was not required to divulge the identity of the informant relied upon in the affidavit. The allegations of the complaint in Rugendorf (see page 530, 84 S.Ct. 825) are even farther removed from those of the instant case than those in Jones. In that case, the affiant obtained information from a confidential informant whom he had previously found to be reliable that he had seen the stolen property in the room sought to be searched.

In Aguilar, the Court held that the affidavit did not furnish a sufficient basis for a finding of probable cause, and that the evidence obtained as a result of such search should have been suppressed. This latest case is important not so much because of the factual situation involved as the Court's citation and discussion of its previous decisions, particularly of Jones and Rugendorf. The Court stated (page 114, 84 S.Ct. page 1514):

> "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were *where he claimed they were,* and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887], was *'credible' or his informa-*

> *tion 'reliable.'* Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime' * * *. [Italics ours.]"

Applying the principles enunciated in Jones, Rugendorf and Aguilar to Semlow's affidavit, and keeping in mind that the Commissioner's determination must be made from the allegations contained in the affidavit, Giordenello and Nathanson, we think there is no basis for the Commissioner's determination that there was probable cause to believe that the alleged stolen property was in the home of the Whitlows.

The information which the Commissioner received from Semlow's affidavit was the rankest sort of hearsay. In the first place, the affidavits alleged to have been made by Harris and Jordan were not shown to the Commissioner, and the manner and means by which Semlow obtained the information disclosed therein is not revealed. Thus, we have a situation where Semlow informed the Commissioner that Harris told him that O'Dell told her that Whitlow's wife received $3,000 in cash and a ring for her part and that Whitlow received money for his part. There was no showing by Semlow that he had any reason to believe that his informants, Jordan and Harris, were "credible or their information reliable." On the contrary, the affidavits disclose that Jordan was an admitted thief and Harris an accomplice.

Even though the allegations of the affidavit be accepted at face value, they are without probative value in support of a determination that the stolen articles were in the home of the Whitlows. The affidavit, after identifying Tony O'Dell as the custodian of the stolen matter, quotes Harris as stating that O'Dell "woke her up and sat on the bed and threw a bundle of money three or four inches thick at her and that she saw some $100 bills that looked new." Where

this incident took place is not revealed and there is no basis for an inference that it was in the Whitlow residence. Harris stated, "Tony O'Dell told her" that Whitlow's wife received a big diamond ring and $3,000 in cash "for her part," and that Whitlow received some money "for his part." "Her part" or "his part" of what is not shown. An inference might be drawn that the Whitlows were engaged in some sort of skulduggery, but it raises no more than an anemic suspicion that the stolen property was located in their home sought to be searched. Thus, the information furnished the Commissioner relevant to his determination of probable cause was far removed from that in Jones and Rugendorf, where the incriminating information was furnished by an informer alleged to be reliable and who placed the contraband in the room for which a search warrant was sought.

■■ Finally, the government contends that the defendant raised the issue as to suppression of the bonds described in the indictment for the first time on appeal. An examination of the motion to suppress reveals that the government is mistaken. The motion sought the suppression of all property obtained as a result of the search but did not ask for the return of certain property, including the bonds. Rule 41(e) recognizes the right to attack the legality of the search and seizure by motion to suppress without a request for the return of the property. The government also asserts in its brief that the defendant "specifically advised the Court that he had no objection to the admission of the bonds into evidence." What the record shows is that the defendant consented to their admission for the purpose of identification. The government cites no case which supports its contention in this respect, and in our view it is without merit. The Court denied defendant's motion to suppress made prior to trial, which we think properly preserved the question for review. Waldron v. United States, 95 U.S.App.D.C. 66, 219 F.2d 37, 41. See also discussion in Jones v.

United States, 362 U.S. 257, 264, 80 S.Ct. 725, 4 L.Ed.2d 697.

For the reasons stated, we conclude that the District Court erred in denying the motion to suppress. It follows that the judgment appealed from must be reversed and the cause remanded. It is so ordered.