**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sheldon R. TELLER and John D.
Sullivan, Defendants-Appellants.**

**No. 16047.**

United States Court of Appeals
Seventh Circuit.

June 13, 1969.

Rehearings Denied July 7, 1969.

Charles A. Bellows, Jason E. Bellows, Sherman C. Magidson, Bellows, Bellows & Magidson, Chicago, Ill., of counsel, Edwin J. Calihan, Jr., Anna R. Lavin, Chicago, Ill., for appellant John Sullivan.

Thomas A. Foran, U. S. Atty., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel, for appellee.

Before SCHNACKENBERG,[1] KILEY and FAIRCHILD, Circuit Judges.

PER CURIAM.

Defendants, Chicago police officers,[2] have appealed from their jury convictions, of selling and transporting narcotics in violation, respectively, of 26 U.S.C. § 4705(a)[3] and 21 U.S.C. § 174.[4] Teller individually appeals from his conviction of three similar offenses under 21 U.S.C. §§ 174 and 176a.[5] We affirm.

At 6:00 p.m. on July 14, 1966, Samuel Washington, a government informant telephoned defendant Teller with narcotics agent Jackson listening on an extension phone. Later that evening narcotics agents searched Washington and equipped him with a Kel-set transmitter. Agent Jackson then drove Washington to the south side of Chicago. Washington met defendant Sullivan, got in his car and rode with him. While the two rode together, narcotics agent Hill overheard their conversation on a Kel-set receiver tuned to Washington's transmitter. Washington told Sullivan that he wanted to restock and gave Sullivan $1,500 in currency whose serial numbers had been recorded by government agents. Sullivan responded that he would have to see "Shelly" first. The two men arranged to meet the following day when Washington said he would have additional money.

A week later Jackson listened to various telephone conversations between Washington and Teller during which they arranged a meeting later that night. Before this meeting Washington was again searched, equipped with a Kel-set transmitter, and given recorded currency. Washington met both defendants, told Teller that he wanted one-fourth of a "kilo" of heroin, that he had $3,000, and asked when he could get it. Sullivan said it would be later, and Washington told defendants he would await their call at his motel room. Agent Hill overheard this conversation on his Kel-set receiver.

The next day agent Jackson listened while Washington talked to each defendant on the phone. Teller told Washington he had not met him because narcotics agents were in the vicinity. Washington arranged to meet both defendants at the rear of another motel to which he had moved. Agent Jackson saw defendants drive to the meeting place in a police car and saw Teller get out and bend down near a pole at the rear of the motel. After they had driven away, Jackson went to the pole, picked up a rolled-up black sock, examined it and replaced it. The defendants soon returned. Washington, equipped with a Kel-set, entered their police car. Teller

---

1. An original draft opinion was written by the late Elmer J. Schnackenberg and submitted to the judges who join in this opinion. Judge Schnackenberg died on September 15, 1968. On October 16, 1968, this court ordered this appeal held in abeyance until the final determination of United States v. White, 405 F.2d 838 (7th Cir. 1969), which was filed on January 7, 1969. We re-used somewhat his draft opinion, and have reached the same result except that we have treated differently the constitutional questions on the use of the Kel-set.

2. The indictment named both defendants in counts 1 and 2, and Teller alone in counts 3 through 5.

3. The unlawful sale, barter or exchange of heroin.

4. Fraudulent and knowing receipt, concealment, and facilitation of transportation and sale of heroin.

5. Fraudulent and knowing receipt, concealment and facilitation of transportation of marijuana.

told Washington that he had the heroin and needed his money in order to "cop" (restock) as he was out of the "stuff." He told Washington that his "stuff" was at the base of the pole. Agent Hill overheard this conversation on his Kel-set receiver. Washington left defendants' police car, found the rolled-up sock, and delivered it to agent Jackson.

The Bureau of Narcotics determined, that same night, that the white powder inside a container in the sock was heroin. The agents obtained federal arrest and search warrants for defendants and their residences. In a search of Teller's residence the next morning, agents recovered heroin, cocaine and marijuana, another rolled black sock containing narcotics, together with narcotics-making apparatus and more than $45,000 in currency, including that previously recorded by the agents, given to Washington and passed by him to defendants. Simultaneously Sullivan's apartment was searched and agents there found several cards on which were recorded six automobile license numbers which had been assigned to narcotics agents.

The foregoing statement of events is from the evidence taken favorably to the government for which Washington was the principal witness. There is no contention that the evidence does not sustain the convictions. The contentions are, principally, that admission into evidence of testimony of agents of what was heard by use of the Kel-set device and of material seized in search of the residences was a violation of defendants' constitutional rights.

■ The use of the Kel-set transmitter and receiver by agent Hill predates December 18, 1967, the retroactive limit of the rule in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), set by the Supreme Court in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). The Supreme Court in the Katz opinion departed from the "trespass" theory of On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), testing the reasonableness of warrantless searches and seizures of informants' words. The On Lee rule consequently is the test of the unreasonableness of the use of the Kel-set before us. Under On Lee, since agent Hill did not trespass upon the persons or premises of defendants, his "eavesdropping" did not violate defendants' constitutional rights. There was, therefore, no error in the district court's admission of agents' testimony.

This court on October 16, 1968 ordered decision on the appeal before us held in abeyance pending final disposition of the appeal in United States v. White, 405 F.2d 838 (7 Cir., 1969). This court's opinion in the White appeal was filed January 7, 1969. The White decision was based principally on the Supreme Court's decision in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507 (1967), which is not controlling here. The Supreme Court on April 8, 1969 granted certiorari applied for by the government in White. Despite the fact that granting of certiorari indicates that White is not final, it is our view that it would be imprudent to delay further decision in the appeal before us. The reasons are that we are convinced that no possible development with respect to White in the Supreme Court can influence our judgment we are now making in affirming the convictions here, and the necessity we feel of avoiding unnecessary delay in filing this opinion.

■ We see no merit in defendant's contention that the Illinois Eavesdropping Act, Ill.Rev.Stat., ch. 38, § 14–1, et seq. (1967), precludes the admission of Kel-set evidence in a federal trial. United States v. Martin, 372 F.2d 63 (7th Cir.), cert. denied, 387 U.S. 919, 87 S.Ct. 2033, 18 L.Ed.2d 972 (1967). Since federal standards govern here there is no violation of the Tenth Amendment.

■ We see no merit in defendants' challenge of the district court's denial of their motions to suppress the fruits of the searches on the ground that the affidavits on which the warrants issued were insufficient to establish probable

cause. The affidavits [6] are signed by narcotics agent Hill, and substantially state his belief that there is concealed money, fruit of violation of the narcotics laws, at the defendant's residence; that he had information from Washington that Washington had paid Teller $3,000 for narcotics; that he was informed by agent Jackson that Jackson had seen the narcotics delivered; that he had furnished Washington with the money and Washington paid the $3,000 to Teller; and that other named agents informed him they had observed Teller in possession of narcotics paraphernalia. This reasoning also applies to defendant Sullivan.

This court's decision in United States v. Whitlow, 339 F.2d 975 (7th Cir. 1964), is of no aid to defendants. The affidavit there was based on the "rankest sort of hearsay." *Id.* at 979. We think Hill's affidavits enabled the Commissioner to perform his neutral and detached function of determining probable cause. The affidavit declared the source of Hill's information and the basis of his belief that the money was the fruit of narcotics law violations. More important it informed the Commissioner of the circum-

6. The affidavits read as follows:

### AFFIDAVIT FOR SEARCH WARRANT

BEFORE C. S. Bentley Pike, Chicago, Ill.

The undersigned being duly sworn deposes and says:

That he has reason to believe that on the premises known as dwelling and garage at 9736 S. Longwood Dr. Beverly Hills, Chicago, Ill. in the No. District of Ill. there is now being concealed certain property, namely money which is the fruit of a crime to-wit, a violation of Title 21. Sec. 174. U. S. Code.

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

Information from Samuel Washington, that he paid Sheldon R. Teller, occupant of said premises $3,000 for narcotic drugs July 21, 1966.

Carl L. Jackson, a U. S. agt. informed complainant he saw the delivery of the narcotics.

Complainant furnished Washington with the money. According to agts. Rendina and Hughes they observed said Teller in possession of narcotic paraphernalia on May 4, 1966.

/s/ Charles E. Hill,
Signature of Affiant.
Narcotic Agent,

Sworn to before me, and subscribed in my presence, July 23, 1966.
C. S. Bentley Pike,
United States Commissioner.

### AFFIDAVIT FOR SEARCH WARRANT

BEFORE C. S. Bentley Pike

The undersigned being duly sworn deposes and says:

That he has reason to believe that on the premises known as Apt. 409, Versailles Apartments, at 5234 So. Dorchester, Chicago, Ill. in the No. District of Ill. there is now being concealed certain property, namely money which is the fruit of a crime to-wit, a violation of Title 21, Sec. 174 U. S. Code.

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

Information from Samuel Washington, that he paid John Sullivan, occupant of said premises, $1500, for narcotic drugs July 14, 1966 and that he Sullivan was present when $3000 was paid to Sheldon R. Teller by him on July 21, 1966. Carl L. Jackson, a nar. agt. informed complainant he saw the delivery of the narcotics on July 22, 1966.

/s/ Charles E. Hill,
Signature of Affiant.
Narcotics Agent,

Sworn to before me, and subscribed in my presence, July 23, 1966.
C. S. Bentley Pike,
United States Commissioner.

stances underlying the narcotics sale. He could have reasonably concluded that Washington was a reliable informant. We think this a common sense interpretation of the affidavits. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). We hold that the affidavits sufficiently showed probable cause and that there was no error in the district court's denial of the motion to suppress.

Defendant Sullivan contends that the seizure of several index cards containing narcotics agents' license plate numbers from his apartment was outside the scope of the search warrant. The property specified in the search warrant was "money which is the fruit of a crime. * * *" The defendant has conceded, however, that an officer may seize items which are in plain sight in addition to those specified in a warrant. The agents performing the search noticed these cards on top of a dresser in Sullivan's apartment. Since they were on top of the dresser they were in plain view of the searching agents, and thus properly seized. The mere fact that these cards were evidentiary and not fruits or instrumentalities of the crime does not preclude them from being seized. Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

Sullivan claims prejudice arising from his misjoinder in indictment and trial with Teller. He relies upon United States v. Spector, 326 F.2d 345 (7th Cir. 1963). In *Spector* the conspiracy counts in the indictment were not based on the substantive counts, proof of the conspiracy counts was not of the same transaction as the substantive, and the conspiracy counts did not relate to the substantive counts. Clearly *Spector* has no application here. The several offenses charged here—sale, fraudulent and knowing receipt, transportation, and concealment—had a close connection, and it is apparent that the substantial rights of Sullivan were not prejudiced by the joinder. See Schaffer v. United States,

362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).

Teller claims that the district court was unduly restrictive in its ruling on the motion under 18 U.S.C. § 3500 for the production of statements of Washington, the main government witness. The court ordered production but, on the government's motion, deleted twelve pages of one statement, and five paragraphs of a second, as unrelated to Washington's direct testimony. Before the deletion the district court made an in camera inspection of the documents, and the parts deleted were sealed and made part of the record on appeal. We have examined the deleted parts, and it is clear to us that defendants have not sustained their burden of persuading us that the parts deleted related to the direct examination of Washington. In the cases relied on by Teller, Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959), United States v. Borelli, 336 F.2d 376 (2d Cir. 1964), and United States v. Cardillo, 316 F.2d 606, 615 (2d Cir. 1963), the statements were related. Thus these cases are not in point.

Teller argues, in addition, that he was denied the use of certain tape recordings, made by the government, of Washington's telephone conversations with him. He alludes to testimony that a tape recording was made. The government denies that tape recordings were made and points out that the testimony referred to by defendant pertains to Washington's attempt to call Teller, and at that time Washington did not reach Teller. The government has expressly represented to the district court and to this court that no tape recordings were made of conversations between Washington and Teller. We accept the government at its word and hold that no error was committed.

When Washington was being cross-examined by counsel for Teller, the court sustained the government's objection to a question seeking to elicit Washington's "present" address. Teller con-

tends this ruling was a "flagrant" abuse of his right of cross-examination under the rule of Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). He argues that he was prevented by the ruling from developing whether Washington was a government "captive" being accorded special treatment for his "cooperation."

Washington testified that he was staying at a motel at government expense at the time of the trial. He also disclosed where he lived four months before trial and at the time of the offense before us. He further testified to his use of a pseudonym, his cohabitation with a woman not his wife, his use of narcotics, his possession of narcotics in one of his three apartments at the time of the alleged offense, his dealing with thieves in the sale of stolen property, his conviction of burglary and arson, and his violations of probation and parole. He testified he had not been indicted for his part in the transaction with defendants, and that he expected to help himself by testifying for the government.

We think that neither *Alford* nor Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), requires a reversal of this conviction. *Smith* does not per se require a new trial merely because the district court sustained an objection to a question seeking to elicit Washington's address. *Smith* requires reversal only where the lack of a witness's name and address denies a defendant an opportunity to effectively cross-examine a witness. When this happens, a defendant is denied his Sixth Amendment right to confrontation. However, the initial question is whether the defendant was denied effective cross-examination. It is clear from the recital of Washington's testimony that the district court did not unduly limit cross-examination of Washington's past record.

Moreover, nothing in United States v. Garafolo, 390 U.S. 144, 88 S.Ct. 841, 19 L.Ed.2d 970 (1968), requires reversal. In *Garafolo*, the government witness had not been permitted to testify what his address was. On appeal, United States v. Garafolo, 385 F.2d 200 (7th Cir. 1967), this court independently examined the record and determined that defendant was not prejudiced by the lack of the government witness's address. However, this determination was made without the benefit of *Smith*. Subsequently, the Supreme Court vacated this court's judgment affirming the conviction and remanded to this court to reconsider in light of *Smith*. Significantly, it did not reverse the conviction. United States v. Garafolo, 390 U.S. 144, 88 S.Ct. 841. Subsequently, this court remanded to the district court to consider this question in a new trial. United States v. Garafolo, 396 F.2d 952 (7th Cir. 1968). The *Smith* issue was not determined on remand in *Garafolo*.

■■■■ We see no merit in the following miscellaneous errors asserted. The district court denied Teller's motion for mistrial because of an agent's volunteering—in response to the court's question why informer Washington was kept by the government in a motel—that "we are concerned for his safety." The court gave an adequate instruction to the two-thirds of the jury who heard the statement to disregard it. We think the realistic view is that any error was, as the district judge thought, "harmless." The court struck from the record an obscene statement attributed to Teller in an agent's testimony, and ordered the jury to disregard it. The obscenity itself in today's world could not have seriously shocked the jury or prejudiced Teller's fair trial on the ground that the jury may have inferred Teller was habitually profane. The 1965 license numbers of government automobiles, found in the search of defendant Sullivan's premises and introduced into evidence, were not immaterial to the alleged 1966 offenses. The court properly overruled Teller's objection based on the best evidence rule to the testimony of the amount of money in excess of $45,000 counted in "two hours" at Teller's residence in execution of the search warrants. We

see no reversible error in these rulings singly or together.

We have considered all questions raised and conclude that defendants were convicted in a fair trial.

Affirmed.