**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jerome B. SOSKIN, Defendant–Appellant.**

**No. 95–2047.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1996.

Decided Nov. 26, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 7, 1997.

Barry Rand Elden, Chief of Appeals, Lori Lightfoot (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for U.S.

Glenn Seiden, Lawrence Edmund Sommers (argued), Seiden & Associates, Chicago, IL, for Jerome B. Soskin.

Before ESCHBACH, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

A jury convicted Jerome Soskin of storing and concealing a stolen firearm in violation of 18 U.S.C. § 922(j) and possessing a stolen firearm with an altered serial number in violation of 18 U.S.C. § 922(k). Soskin appeals his conviction arguing that the district court impermissibly modified the grand jury indictment, improperly limited his cross-examination of a government witness, and erred in instructing the jury. We affirm.

## I.

Jerome Soskin managed a gun shop in suburban Bensenville called Gun World. He also held a federal license to deal in firearms. Sometime in the early part of June 1990, Soskin came into possession of a Desert Eagle handgun. Sergeant Mark Selvik of the Bensenville Police Department was a regular customer of Gun World. When Selvik visited the store (while off duty), Soskin asked him

to run the serial number of the Desert Eagle through the police computer system. Selvik did so and discovered that the gun had been stolen in an October 15, 1988 residential burglary in Forest Park, Illinois. Selvik informed Gun World's office manager, who in turn notified Soskin, that the gun was stolen. But Soskin kept the gun anyway; in fact, on three occasions he rented it to customers.

On January 16, 1991, after receiving a tip from an informant, two Bureau of Alcohol, Tobacco and Firearms ("ATF") agents visited Gun World to see if the store still had the stolen gun. Not only did the agents discover the stolen weapon on the premises, Gun World rented it to the agents, and allowed the agents to use the gun on its firing range. While handling the gun, the ATF agents noticed that its serial number had been altered: the "3" had been overstamped with an "8" and the letters "AA" had been added at the end of the original serial number. The next day, ATF agents executed a search warrant at Gun World, seizing the stolen gun along with other evidence.

A grand jury thereafter charged Soskin in a two-count superseding indictment. Count one charged:

> From in or about the Summer of 1990 and continuing to on or about January 17, 1991, at Bensenville, in the Northern District of Illinois, Eastern Division, Jerome B. Soskin, defendant herein, did knowingly receive, conceal and store a stolen firearm which had been transported in interstate commerce, namely, a Desert Eagle .357 Magnum semiautomatic pistol; defendant knowing and having reasonable cause to believe that the firearm was stolen; In violation of Title 18, United States Code, Section 922(j).

Count two charged:

> From in or about the Summer of 1990 and continuing to on or about January 17, 1991, at Bensenville, in the Northern District of Illinois, Eastern Division, Jerome B. Soskin, defendant herein, did knowingly receive and possess a firearm which had been transported in interstate commerce, namely, a a[sic] Desert Eagle .357 Magnum semi-automatic pistol, and which firearm had the importer's and the manufac-

turer's serial number altered; In violation of Title 18, United States Code, Section 922(k).

Soskin pleaded not guilty to the charges and the case proceeded to trial. At the start of the trial's second day, the government moved to modify the indictment to change the relevant time period in the indictment from "Summer of 1990 and continuing to on or about January 17, 1991," to "on or after November 30, 1990 to on or about January 17, 1991." The government proposed the modification because the grand jury had returned the indictment based on statutes amended effective November 30, 1990. To correct this discrepancy, the government sought to narrow the time period encompassed in the indictment so that conduct occurring before the statute's effective date was not part of the charged conduct. The district court, over Soskin's objection, granted the government's motion. Trial then proceeded on the narrowed indictment.

During trial, ATF Agent Michael Campbell—one of the two agents who had rented the Desert Eagle from Gun World—testified concerning the investigation. On cross-examination Soskin sought to question Agent Campbell concerning various ATF publications provided to federally licensed firearm dealers, but the government objected, arguing that Campbell held no expertise in ATF regulations governing federally licensed firearm dealers, and that in any event it intended to call an ATF expert on the regulations who would be available for cross-examination. The court sustained the government's objection and refused to allow Soskin to question Campbell concerning the ATF publications.

Following the close of evidence, the court included a jury instruction concerning the defense of entrapment by estoppel. Soskin objected, contending that he was not claiming the defense of entrapment by estoppel. Rather, Soskin claimed that he did not violate federal firearm regulations. In support of this line of defense, Soskin proffered a jury instruction supposedly derived from the ATF Handbook. The court rejected Soskin's proposed instruction, concluding that the ATF Handbook was not the law. The court

also overruled Soskin's objection to the entrapment by estoppel instruction.

The jury convicted Soskin on both counts in the indictment: storing and concealing a stolen firearm in violation of 18 U.S.C. § 922(j), and possessing a stolen firearm with an altered serial number in violation of 18 U.S.C. § 922(k). Soskin appeals his conviction arguing that the district court impermissibly modified the grand jury indictment, improperly limited his cross-examination of ATF Agent Campbell, and erred in instructing the jury on entrapment by estoppel and not on the ATF Handbook provisions.

## II.

### A. Modification of Grand Jury Indictment

 The Fifth Amendment guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. "Under the Grand Jury Clause of the Fifth Amendment, the possible bases for conviction are limited to those contained in the indictment." *United States v. Crockett*, 979 F.2d 1204, 1210 (7th Cir.1992). "An indictment may not be 'amended except by resubmission to the grand jury.'" *Id.* (quoting *United States v. Leichtnam*, 948 F.2d 370, 376 (7th Cir.1991)). On the other hand, "because '[a]n indictment may be narrowed, either constructively or in fact, without resubmitting it to the grand jury,' such a variance is not a per se violation of the Fifth Amendment's Grand Jury Clause." *United States v. Thompson*, 23 F.3d 1225, 1230 (7th Cir.1994). Thus, "[n]arrowing the indictment so that the trial jury deliberates on fewer offenses than the grand jury charged does not constitute amendment." *Crockett*, 979 F.2d at 1210.

 In this case, Soskin claims that the district court improperly amended the grand jury indictment by changing the relevant time period in the indictment from "Summer of 1990 and continuing to on or about January 17, 1991," to "on or after November 30, 1990 to on or about January 17, 1991." The government proposed the changes because the grand jury had returned the indictment based on statutes that had been amended effective November 30, 1990. Specifically, 18 U.S.C. § 922(j) was amended, effective November 30, 1990. Prior to the 1990 amendment, § 922(j) provided:

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, or which constitutes, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

The amendment added two important phrases:

It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or *which has been shipped or transported in,* interstate or foreign commerce, *either before or after it was stolen,* knowing or having reasonable cause to believe that the firearm or ammunition was stolen. (Emphasis added.)

Similarly § 922(k) was amended in 1990 with a November 30, 1990 effective date. Before the amendment, 922(k) provided:

(k) It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered.

The amended version of § 922(k) provided:

(k) It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered *and has, at any time, been shipped or transported in interstate or foreign commerce.* (Emphasis added.)

Soskin argues that by changing the date in the indictment to begin on November 30, the district court improperly amended the indictment because the 1990 amendments to §§ 922(j) and 922(k) broaden criminal liability by expanding federal jurisdiction.

█ Soskin's argument is misplaced. He was not charged in the indictment with violating the older versions of §§ 922(j) and 922(k). Rather, the grand jury indictment charged Soskin with violating the amended versions of §§ 922(j) and 922(k). The court did not change the charged conduct; it merely limited the time frame to the period which fell after the effective date of the statutes charged. A narrowing of the time frame contained in the indictment constitutes a narrowing of the indictment and thus is not an impermissible amendment in violation of the Fifth Amendment. *See e.g., Crockett,* 979 F.2d at 1210 ("[n]arrowing the indictment so that the trial jury deliberates on fewer offenses than the grand jury charged does not constitute amendment.").

█ While Soskin does not present it as such, his perceived problem with the indictment is that it charged him with conduct that for part of the time was arguably not illegal. The indictment charged that "[f]rom in or about the Summer of 1990 and continuing to on or about January 17, 1991, ... Soskin .... did knowingly receive, conceal and store a stolen firearm which had been transported in interstate commerce ...." and "[f]rom in or about the Summer of 1990 and continuing to on or about January 17, 1991, ... Soskin ... did knowingly receive and possess a firearm which had been transported in interstate commerce...." But until November 30, it was only a crime to "store ... any stolen firearm ... which is moving as, which is a part of, or which constitutes, interstate or foreign commerce...." Similarly until November 30, it was only unlawful to "transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered." Soskin could say the charged conduct was arguably not illegal because this circuit has not yet determined the precise effect of the November 30 amendment. *Compare United States*

*v. Honaker,* 5 F.3d 160, 162 (6th Cir.1993), with *United States v. Cruz,* 50 F.3d 714, 716–17 (9th Cir.1995) (both explaining the significance of the 1990 amendment to § 922(j) and how it affected federal jurisdiction). That issue does not affect our decision in this case, however, because as we stated in *United States v. Spector,* 326 F.2d 345, 347 (7th Cir.1963), "[t]here is an essential difference between a broadening of the charge to embrace conduct which the grand jury did not incorporate in the indictment and limiting the charge to excise from the indictment conduct that describes no offense." The former is prohibited while the latter is completely proper.

*Spector* illustrates this point nicely. In *Spector,* the defendants were charged with a conspiracy beginning in May 1956 and continuing into November 1956. The defendants moved to dismiss the count because the statute under which they were charged did not prohibit the conduct alleged in the indictment until it was amended, effective July 28, 1956. The district court denied the motion; however, it limited the government's proof to July 28, 1956 and dates thereafter. On appeal, this court upheld the narrowing of the time frame in the indictment, noting that "[i]n the instant case the charge in the indictment was not broadened—it was limited. The limitation coincided with the effective date of the amendment of section 1006 which made the alleged conduct of defendants, if proved, a violation of the statute." The court added: "After the limitation, if the remaining allegations of the indictment charge the commission of the crime, there can be no prejudice to the defendant. In fact, prejudice would lie in a failure to limit." *Id.* Likewise, in this case the district court did not err in narrowing the time frame in the indictment to coincide with the effective date of the statute under which Soskin was charged, and Soskin suffered no prejudice from this modification. *Id.*

### B. *Testimony of Agent Campbell*

█ Soskin also appeals the district court's decision limiting Soskin's cross-examination of Agent Campbell. The government had called Campbell to testify regarding his

involvement in the investigation of Soskin. Campbell testified that he went to Gun World on January 16, 1991, rented the Desert Eagle, and noticed that the serial number had been altered. On cross-examination, Soskin sought to question Campbell regarding a book called "Your Guide to Firearm Regulations," an ATF manual entitled "State Laws and Published Ordinances for Firearms," and a guideline issued by the ATF entitled "Your Guide to Federal Firearms Regulations." The government objected to the questioning of Campbell regarding these sources. The court noted that the books were not yet in evidence and Soskin's attorney explained, "No, no. But I'm laying my foundation through this witness." At sidebar, Soskin's attorney reiterated that "I'm trying to establish foundation because there is an actual provision in there that requires them, upon learning a gun is stolen, to call their local police department." The district court sustained the government's objection and refused to allow Soskin to question Campbell about the publications, concluding that "[w]hat this witness knows about the regulations or the specifics of them in terms of cross examination is not relevant."

On appeal, Soskin argued in caption:

THE DEFENDANT WAS PREJUDICED WHEN THE COURT DID NOT ALLOW THE DEFENDANT ANY CROSS EXAMINATION OR INSTRUCTIONS REGARDING A BATF PUBLICATION DISTRIBUTED TO GUN DEALERS WHICH STATED THE DUTIES OF GUN SHOP OWNERS TO REPORT STOLEN FIREARMS.

However, nowhere in his brief does Soskin explain how the court erred in limiting the cross-examination of Campbell. At trial, Soskin maintained that through his questioning of Campbell he sought to lay a foundation for the admission of the three publications. While the court prohibited this line of questioning of Campbell, the government called ATF Special Investigator Margaret Sanders, an expert on firearm regulations, and Soskin fully cross-examined her regarding the ATF regulations concerning stolen firearms, thus laying the foundation he sought through Campbell. So it is unclear of what Soskin

complains. If it is that Soskin was unable to question Campbell about Campbell's understanding of the law, we agree with the district court that "what this witness knows about the regulations or the specifics of them in terms of cross examination is not relevant...." Under these circumstances the district court did not abuse his discretion in limiting Soskin's cross-examination of Campbell. *United States v. Wilson*, 985 F.2d 348, 351 (7th Cir.1993) ("The trial court has wide discretion in managing cross-examination....").

## C. Jury Instruction

Soskin's final arguments on appeal concern the jury instructions. At trial the government proposed and the court gave a jury instruction on entrapment by estoppel:

One of the issues in this case with respect to Count One is whether the defendant was entrapped by estoppel. A defendant who has been entrapped by estoppel must be found not guilty.

Entrapment by estoppel applies when a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonably believes the official. That the defendant may have or did report to the police that the firearm described in Count One of the indictment was stolen and that he had the firearm is not entrapment by estoppel and is not a defense. However, if: (1) an official of the government affirmatively assured the defendant that his conduct with respect to the stolen gun was legal; (2) the defendant relied on the affirmative assurance; and (3) the defendant's reliance was reasonable in light of the official's identity, the point of law represented, and the substance of the assurance, then defendant was entrapped by estoppel.

On appeal, Soskin argues that the district court erred in giving this instruction because "[t]he defendant did not tender this instruction, nor did he have any intention of raising this defense at trial." Soskin claims that he suffered severe prejudice when this new defense theory was thrust upon the defendant by the government.

In reviewing the defendant's objection to the district court's jury instructions, this court "must determine from looking at the charge as a whole, whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *United States v. Brandon,* 50 F.3d 464, 468 (7th Cir.1995). We cannot agree with Soskin that the district court erred in instructing the jury on entrapment by estoppel. Throughout the trial, Soskin elicited testimony implying that because he had requested that the police run the gun's serial number, he had no further duty regarding the Desert Eagle. Even if Soskin did not plan on arguing entrapment by estoppel, the court did not err in instructing the jury so that it would not be misled by this line of questioning.

Soskin also takes issue with the substance of a portion of the entrapment by estoppel instruction: "That the defendant may have or did report to the police that the firearm described in count one of the indictment was stolen, and that he had the firearm, is not entrapment by estoppel and is not a defense." Soskin argues that this statement "was made without any citation to authority whatsoever, as counsel for the defendant pointed out." However, on appeal Soskin fails to present any authority that this instruction was an incorrect statement of the law of entrapment by estoppel. Rather, his objection to this instruction relates to his final issue on appeal—the district court's refusal to instruct the jury using tendered Defendant's Instruction No. 1:

> The Bureau of Alcohol, Tobacco and Firearms Handbook of rules and regulations distributed to gun dealers reads in part that stolen guns are to be reported to the local police.
>
> Should you find from your consideration of all the evidence that the defendant complied with the applicable regulation, then you should find that the defendant did not knowingly possess a stolen firearm.

Soskin claims that this is a correct statement of the law and that the district court erred in refusing this instruction. If the above statement is a correct statement of the law as Soskin asserts, then the portion of the entrapment instruction to which Soskin objected is not. However, Soskin is wrong. Nowhere does § 922(j) or § 922(k) provide that notification of the police constitutes a defense. Nor does the regulation Soskin cites, 27 C.F.R. § 179.141, support his instruction:

> Whenever any registered firearm is stolen or lost, the person losing possession thereof will, immediately upon discovery of such theft or loss, make a report to the Director showing the following:
>
> (a) Name and address of the person in whose name the firearm is registered, (b) kind of firearm, (c) serial number, (d) model, (e) caliber, (f) manufacturer of the firearm, (g) date and place of theft or loss, and (h) complete statement of facts and circumstances surrounding such theft or loss.

Soskin is not the person who lost possession of the Desert Eagle; he was the person possessing the stolen gun. Additionally, the police is not the "Director." Therefore, this regulation does not support Soskin's claim. Since a defendant is only entitled to an instruction that "represents an accurate statement of the law," and since the tendered instruction was not an accurate statement of the law, the court did not err in refusing the instruction. *United States v. Akinsanya,* 53 F.3d 852, 856–57 (7th Cir.1995). For the same reason, Soskin's objection to the entrapment by estoppel instruction fails.

## III. Conclusion

The district court did not improperly amend the grand jury indictment by narrowing the time frame. Nor did it err in limiting Soskin's cross-examination of Agent Campbell, or in instructing the jury on entrapment by estoppel but not on the tendered instruction based on the ATF Handbook. For these and the forgoing reasons, we

AFFIRM.