In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2172

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GEORGE E. ROBEY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 12 CR 00027-001 — **Sarah Evans Barker**, *Judge.*

ARGUED APRIL 7, 2016 — DECIDED AUGUST 3, 2016

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Defendant George Robey operated a modern-day "chop shop"—he and his associates stole cars, altered their identities using office and computer equipment, and then sold them. He was convicted by a jury, and the district court sentenced him to 110 months' imprisonment and three years of supervised release.

Robey appeals his conviction and sentence on three grounds. First, he argues that he did not receive a speedy trial, in violation of the Speedy Trial Act and the Sixth Amendment. Second, Robey contends that the district court erred in allowing the government to amend the indictment by dropping nineteen of the twenty-five charges. Third, he argues that the district court erred at sentencing by finding that Robey's theft of ten vehicles, in addition to the four vehicles forming the basis of his conviction, constituted relevant conduct. We affirm.

## I. BACKGROUND

### A. Factual Background

From 2009 until 2011, Robey and his associates stole cars from lots around Indianapolis, altered the cars' identities, and then sold them. As part of this operation, Robey would change a stolen car's identity by giving it a new Vehicle Identification Number ("VIN"), a unique 17-digit identification code. Robey would also create counterfeit documents to support a stolen car's new identity, which included generating a title, insurance card, sales contract, and temporary license plate. Robey created these counterfeit VINs and documents using a computer, scanner, printer, and digital image editing software.

### B. Procedural History

Robey was arrested on a criminal complaint on December 6, 2011. Between Robey's arrest and indictment, Robey and the government jointly requested and were granted two ends-of-justice continuances to extend the pre-indictment period.

On February 23, 2012, a grand jury returned a 25-count indictment against Robey, alleging conspiracy to identify, steal, and sell stolen vehicles for profit; trafficking in vehicles with altered VINs; making, uttering, and possessing counterfeit state securities; and identification document fraud.

Robey made an initial appearance on the indictment on March 1, 2012. Between Robey's initial appearance and trial start date of February 10, 2015, Robey requested and was granted ten ends-of-justice continuances. Additionally, he filed several pre-trial motions, requested and received new counsel twice, underwent a psychological examination, and entered and withdrew from a plea agreement. During this period, the government also was granted one ends-of-justice continuance.

On December 29, 2014, the government moved to dismiss nineteen of the twenty-five counts in the indictment, reducing the charges against Robey to six remaining counts—four counts of trafficking in vehicles with altered VINs, in violation of 18 U.S.C. § 2321; and two counts of making, uttering, and possessing counterfeit state securities, in violation of 18 U.S.C. § 513(a). The district court granted this motion.

Robey also filed two motions to dismiss. On December 31, 2014, Robey filed his first motion to dismiss, arguing that his speedy trial right had been violated, pursuant to 18 U.S.C. §§ 3161(c)(1), 3162, because his case had not been tried within 70 days of his initial appearance. The district court denied Robey's motion on January 5, 2015, finding that only 28 days had elapsed on Robey's pre-trial speedy trial clock. On January 28, 2015, Robey filed his second motion to dismiss, again alleging violation of his right to a speedy trial. The district court denied this motion on February 6, 2015.

Robey's three-day trial began on February 10, 2015. The jury saw and heard evidence that Robey had, for four stolen vehicles, altered the VINs, created counterfeit vehicle documents, and sold the vehicles, including one sale to an undercover agent. The jury convicted Robey of all six counts on February 12, 2015.

On May 20, 2015, the district court held Robey's sentencing hearing. The revised presentence investigation report ("PSR") concluded that, in addition to the four vehicles that were the focus of the trial, another ten stolen vehicles constituted "relevant conduct." The evidence found in Robey's home showed that, as with the four cars that made up his conviction, he had altered the VINs and created counterfeit documents for these other ten cars. The total value of the fourteen cars—four that constituted Robey's conviction and ten deemed relevant conduct—exceeded $400,000. This loss amount increased Robey's offense level by 14, pursuant to U.S.S.G. §§ 2B1.1(b)(1), (H) (2014).

At sentencing, Robey contested the total value of the cars, arguing that the ten uncharged cars should not be considered relevant conduct. The district court ruled that the evidence found during the search of Robey's home confirmed a pattern of common conduct sufficient to establish the ten additional vehicles as relevant conduct. Adopting the PSR, the district court determined Robey's guidelines range was 110 to 137 months' imprisonment, based on an adjusted offense level of 26 and criminal history category of V. After taking into account Robey's age and infirmity, the court imposed a within-guidelines sentence of 110 months' imprisonment and three years of supervised release, with the standard conditions and

some discretionary conditions. Judgment was entered against Robey on May 27, 2015. Robey appealed.

## II. ANALYSIS

Robey appeals his conviction and sentence on three main grounds. First, he claims that he did not receive a speedy trial, in violation of the Speedy Trial Act and Sixth Amendment. Second, Robey contends that the district erred in allowing the government to amend the indictment by dropping nineteen of the twenty-five charges. Third, he argues that the district court erred at sentencing by ruling that Robey's theft of ten vehicles, in addition to the four vehicles that form the basis of his conviction, constituted relevant conduct.

### A.  Speedy Trial Violations

Robey claims that his right to a speedy trial was violated under the Speedy Trial Act and the Sixth Amendment. Robey first argues that his speedy trial right under the Speedy Trial Act was violated by: (1) the 79 days that elapsed between his arrest and indictment and (2) the 1076 days that elapsed between his initial appearance and trial commencement. Robey then contends his speedy trial right under the Sixth Amendment was violated by the 1076 days that elapsed between his initial appearance and trial commencement.

### 1.  Speedy Trial Act

This court reviews "the district court's legal interpretation of the [Speedy Trial Act] *de novo*, and its decisions to exclude time for an abuse of discretion." *United States v. Ramirez*, 788 F.3d 732, 735 (7th Cir. 2015).

The Speedy Trial Act generally requires that a criminal indictment be filed within 30 days of a defendant's arrest. 18

U.S.C. § 3161(b). Furthermore, the Speedy Trial Act generally requires that a criminal trial begin within 70 days of an indictment or a defendant's initial appearance, whichever is later. *Id.* § 3161(c)(1). The Speedy Trial Act provides exceptions, however, which allow certain periods of delay to be "excluded" from the relevant speedy trial clock. *Id.* § 3161(h). Some of these exceptions, such as consideration of plea agreements, are automatically excludable. *Id.* § 3161(h)(1)(G); *see United States v. O'Connor*, 656 F.3d 630, 642 (7th Cir. 2011) (holding that "periods of delay excludable under § 3161(h)(1)–(6) may be *automatically* excluded if the specified conditions are present"). In addition to the enumerated automatic exclusions, a judge may exclude any period of delay resulting from a continuance if the judge finds "the *ends of justice* served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (emphasis added).

In granting an ends-of-justice continuance, the judge shall consider the factors listed in § 3161(h)(7)(B) and must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice would be served." *Id.* § 3161(h)(7)(A). The district court's decision "need not be lengthy and need not track the statutory language," but it should provide this court with an adequate record to review the district court's consideration of the relevant factors. *O'Connor*, 656 F.3d at 643 (internal quotation marks omitted). In reviewing an ends-of-justice decision, this court examines not only the district court's order on a particular motion but also "the sequence of events leading up to the continuance followed by the court's later explanation." *United States v. Wasson*, 679 F.3d 938, 946 (7th Cir. 2012) (internal quotation marks omitted).

In the present case, we begin by addressing Robey's pre-indictment period of delay and then turn to his pre-trial period of delay.

Robey first argues that the 79 days that elapsed between his arrest on December 6, 2011, and his indictment on February 23, 2012, violated the Speedy Trial Act's 30-day pre-indictment requirement. However, during this period, Robey and the government jointly requested and were granted two ends-of-justice continuances. Excluding these periods of times leaves only 13 days on Robey's pre-indictment speedy trial clock.

In this case, Robey's pre-indictment delay argument fails because the district court did not abuse its discretion in granting the two ends-of-justice continuances. Both of the district court's decisions were supported by an order articulating adequate justification, as well as by the relevant sequence of events. The court granted the two ends-of-justice continuances because *both* Robey and the government needed additional time to attempt to negotiate a resolution to the matter without a trial. These were reasonable decisions because they allowed both parties, at an early stage in the case, to pursue the option of resolving the case without a trial.

Robey next argues that the 1076 days that elapsed between his initial appearance on March 1, 2012, and his trial commencement on February 10, 2015, violated the Speedy Trial Act's 70-day pre-trial requirement.

Again, most of this time is excludable. First, the period of time in which Robey was negotiating his withdrawn plea agreement is automatically excluded. § 3161(h)(1)(G); *O'Connor*, 656 F.3d at 642. Second, the district court granted ten

ends-of-justice continuances for Robey.[1] Excluding these time periods leaves only 60 days on Robey's pre-trial speedy trial clock. Third, the district court granted one ends-of-justice continuance for the government. Further excluding this time period leaves only 50 days on Robey's pre-trial speedy trial clock. Therefore, if the district court did not abuse its discretion in granting Robey's ten ends-of-justice continuances, his argument fails.

Here, the district court did not abuse its discretion in granting ten ends-of-justice continuances for Robey. Each of the district court's decisions was supported by an order articulating adequate justification, as well as by the relevant sequence of events. We discuss each briefly.

The court granted Robey's first, second, and third ends-of-justice continuances because Robey required additional time to evaluate discovery, explore the possibility of a plea agreement, and effectively prepare for trial if the plea negotiations proved unsuccessful. These were reasonable decisions because they allowed Robey, at an early stage in the case, to pursue the option of a plea agreement and still prepare for trial.

The court granted Robey's fourth ends-of-justice continuance because Robey required additional time to undergo a psychological evaluation, evaluate discovery, explore the possibility of a plea agreement, and effectively prepare for trial if the plea negotiations proved unsuccessful. This was a reasonable decision because Robey did eventually undergo a

---

[1] The district court granted ten ends-of-justice continuances for Robey on the following dates: (1) April 12, 2012, (2) June 12, 2012, (3) August 7, 2012, (4) November 28, 2012, (5) March 1, 2013, (6) May 1, 2013, (7) September 9, 2013, (8) November 21, 2013, (9) July 3, 2014, and (10) August 20, 2014.

psychological evaluation. This reasonable decision also allowed Robey to pursue the option of a plea agreement and still prepare for trial.

The court granted Robey's fifth ends-of-justice continuance to allow his new counsel to prepare for trial. This was a reasonable decision given that Robey had been appointed a new lawyer, at Robey's request, two weeks earlier.

The court granted Robey's sixth, seventh, and eighth ends-of-justice continuances because of delays in trial preparation arising from Robey's psychological evaluation. These were reasonable decisions in light of Robey's psychological evaluation.

The court granted Robey's ninth ends-of-justice continuance in order to prepare for trial. This was reasonable decision given that he had recently withdrawn from a plea agreement.

The court granted Robey's tenth ends-of-justice continuance to evaluate discovery, explore a plea agreement, and prepare for trial. This was a reasonable decision because Robey had been appointed new counsel again, at Robey's request, two weeks earlier.

For the sake of completeness, we also review the government's one ends-of-justice continuance, which the court granted because the government had recently changed counsel and the leading case agent was unavailable for the trial due to the expected birth of his child. This was a reasonable decision because, in fact, the government's new counsel was heavily involved in pending litigation and the leading case agent was unavailable for the trial because of paternity leave.

Accordingly, Robey did not suffer violation of his speedy trial right under the Speedy Trial Act.

*2. Sixth Amendment*

Robey also argues that the 1076 days that elapsed between his initial appearance and his trial violated his right to a speedy trial under the Sixth Amendment, which is related to but independent of his Speedy Trial Act claim. *O'Connor*, 656 F.3d at 643. Because Robey did not raise this argument below, we review for plain error. *Id.*

The Sixth Amendment guarantees an accused "the right to a speedy and public trial." U.S. Const. amend. VI. This court examines the following factors in assessing a speedy-trial claim under the Sixth Amendment: "'[W]hether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result.'" *O'Connor*, 656 F.3d at 643 (alteration in original) (quoting *Doggett v. United States,* 505 U.S. 647, 651 (1992)).

In the case at hand, the pretrial period did not violate the Sixth Amendment. On one hand, Robey did timely assert his right, and he is entitled to a presumption of prejudice. *See id.* ("Delays of more than one year are considered presumptively prejudicial."). On the other hand, Robey bears "primary responsibility" for the years of pretrial delay, and he was not actually prejudiced. *Id.* He filed a motion to suppress, sought ten ends-of-justice continuances, and entered and withdrew from a plea agreement. He underwent a psychological examination. He also changed lawyers twice. Furthermore, it appears that Robey was uncooperative with his appointed counsel, as indicated by his pro se letters to the court and change-of-counsel hearings. As a result, while the pretrial delay in

Robey's case was lengthy, there was no Sixth Amendment vi-
olation. *See id.* (holding no constitutional violation because
defendant "bears primary responsibility for many of the pre-
trial delays and did not suffer actual prejudice").

### B. *Amending the Indictment*

Robey next claims that the district erred in allowing the
government to amend the indictment by dismissing nineteen
of the twenty-five counts prior to trial. Specifically, Robey
contends that "[b]ecause the modification was made without
the oversight of a grand or petit jury, the amendment violated
Robey's constitutional rights." (Appellant Br. 33–34.) Robey
raises his claim under the Fifth Amendment, which provides,
"[n]o person shall be held to answer for a … crime, unless on
a presentment or indictment of a Grand Jury." U.S. Const.
amend V; *see also United States v. Soskin*, 100 F.3d 1377, 1380
(7th Cir. 1996) ("Under the Grand Jury Clause of the Fifth
Amendment, the possible bases for conviction are limited to
those contained in the indictment.") (internal quotation
marks omitted).

Because Robey did not preserve this claim in district court,
it is forfeited, and we review only for plain error. *United States
v. Perez*, 673 F.3d 667, 669 (7th Cir. 2012). For plain error, a
defendant must show the following: "(1) an error or defect (2)
that is clear or obvious (3) affecting the defendant's substan-
tial rights (4) and seriously impugning the fairness, integrity,
or public reputation of judicial proceedings." *Id.* (internal
quotation marks omitted).

Here, Robey cannot show error, plain or otherwise, be-
cause the district court's dismissal of nineteen of twenty-five

counts of the indictment prior to trial only narrowed the indictment against him, a practice that has been expressly upheld by the Supreme Court and this court.

In *United States v. Miller*, the Supreme Court held that "where an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment." 471 U.S. 130, 145 (1985) (internal quotation marks omitted). In the same vein, this court has also explicitly stated, "[n]arrowing the indictment so that the trial jury deliberates on fewer offenses than the grand jury charged does not constitute amendment." *Soskin*, 100 F.3d at 1380 (alteration in original and internal quotation marks omitted). Thus, under the precedent of the Supreme Court and this court, the district court's dismissal of nineteen counts of Robey's indictment prior to trial was not a forbidden amendment.

In fact, Robey's argument is the same as the one expressly rejected by the *Miller* Court. Robey claims a constitutional violation because the court dismissed nineteen counts of the indictment prior to trial. In other words, Robey is contending "not that the indictment failed to charge the offense for which he was convicted, but that that the indictment charged more than was necessary." *Miller*, 471 U.S. at 140. The *Miller* Court rejected this argument, declaring that the defendant "was tried on an indictment that clearly set out the offense for which he was ultimately convicted," and consequently, there was "no deprivation of [the defendant's] substantial right to be tried only on charges presented in an indictment returned by a grand jury." *Id.* (internal quotation marks omitted). The

*Miller* Court's response, which this court has applied consistently, defeats Robey's claim. *See e.g.*, *Perez*, 673 F.3d at 669 (citing *Miller*, 471 U.S. at 144).

Robey's attempts to distinguish *Miller* from the present case are unpersuasive. Robey argues that the entire indictment in *Miller* was sent to the petit jury and asks this court to "draw [a distinction] between indictment modifications that occur with jury oversight and those that occur without." (Appellant Reply. Br. 13.) Robey's argument is meritless and undermined by his own reply brief. As Robey concedes, this court has allowed modified indictments to be presented to a petit jury without resubmission to a grand jury. *See e.g.*, *Perez*, 673 F.3d at 669; *United States v. Graffia*, 120 F.3d 706, 711 (7th Cir. 1997); *Soskin*, 100 F.3d at 1381.

Robey subsequently argues that this court allows presentation of a modified indictment to a petit jury without resubmission to a grand jury "*only* when the modifications do not materially affect the substance or scale of the charges alleged." (Appellant Reply Br. 13 (emphasis added).)

Robey misstates the law. Instead, this court has clearly articulated what does and does not constitute an impermissible amendment—"[n]arrowing the indictment so that the trial jury deliberates on fewer offenses than the grand jury charged does not constitute amendment. But the indictment may not be broadened so as to present the trial jury with more or different offenses than the grand jury charged." *United States v. Crockett*, 979 F.2d 1204, 1210 (7th Cir. 1992) (citations and internal quotation marks omitted). In the present case, the district court's dismissal of nineteen of twenty-five counts of the indictment prior to trial narrowed, rather than broadened, the

indictment such that the trial jury deliberated on fewer offenses than charged by the grand jury. Accordingly, the indictment was not impermissibly amended.

### C. Relevant Conduct at Sentencing

Finally, Robey argues that the district court erred at sentencing by ruling that Robey's theft of ten uncharged vehicles, in addition to the four charged vehicles from his conviction, constituted relevant conduct.

A district court must find relevant conduct by a preponderance of the evidence. *United States v. Baines*, 777 F.3d 959, 963 (7th Cir. 2015). "Whether uncharged offenses amount to relevant conduct under the Sentencing Guidelines is a factual determination, which we review for clear error." *Id.* This court will not "second guess the district court unless, after reviewing the record as a whole, we are left with a definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted).

In assessing whether uncharged activities constitute relevant conduct, this court has applied the advisory sentencing guidelines. *E.g.*, *id*. Under the sentencing guidelines, in theft cases, a defendant's offense level is based in part on the "loss" caused by the defendant's conduct. U.S.S.G. § 2B1.1(b)(1); *see also United States v. Hill*, 683 F.3d 867, 869 (7th Cir. 2012). This includes the loss caused by the offenses of conviction, as well as "all acts and omissions … that were part of the *same course of conduct* or *common scheme or plan* as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (emphasis added); *see also Baines*, 777 F.3d at 963. A "common scheme or plan" requires that two or more offenses be "substantially connected to each other by

at least one common factor; such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3 n.9(A); *see also Baines*, 777 F.3d at 963. Additionally, even if they do not meet the requirements of a common scheme or plan, offenses may still qualify as part of the "same course of conduct" if they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 n.9(B); *see also Baines*, 777 F.3d at 963.

In the present case, at sentencing, the district court did not commit clear error in finding that the ten uncharged vehicles constituted relevant conduct.

The evidence at trial and sentencing support a finding of a "common scheme or plan," § 1B1.3(a)(2) n.9(B), because there were multiple commonalities that substantially connected the charged and uncharged vehicles. There was a common purpose behind stealing and altering the identities of all fourteen vehicles—selling them. Furthermore, there was a common *modus operandi* applied to both the charged and uncharged vehicles. At trial, the jury heard how Robey altered the identities of the four charged vehicles with counterfeit VINs and supporting documents. The jury also was shown evidence that Robey created this false identity using computers, printers, a scanner, photo paper, vehicle title and license plate templates, carbon paper sales contracts, and a typewriter. In particular, the jury was shown typewriter ribbon from Robey's home that contained identifying information for the four charged vehicles, including make, model, year, color, mileage, and counterfeit VIN that matched stickers affixed to the stolen vehicles. At sentencing, the government

proffered evidence of the same *modus operandi* for the ten uncharged vehicles, including counterfeit documents and typewriter ribbon containing the make, model, year, color, mileage, and counterfeit VIN. As a result, at sentencing, the court confirmed that "all the 14 [charged and uncharged] vehicles … [were] identified by reviewing the documents and materials and the typewriter ribbon in Mr. Robey's possession pursuant to the search warrant[.]" (Sent. Tr. 19, May 20, 2015.)

The evidence presented at trial and sentencing is more than sufficient to support the district court's finding of a "pattern of relevant conduct that far exceeded in its details the four cars that were stolen that were before the jury." (*Id.* at 20.) As such, the district court did not commit clear error in finding that the ten uncharged vehicles constituted relevant conduct.

Robey's main argument against a "common scheme or plan," focuses on the temporal "gap" between the charged and uncharged vehicles. Robey's assertion is belied by the record—there was only a four-month "gap" between the latest uncharged vehicle stolen on December 16, 2010 and the earliest charged vehicle on April 17, 2011. (PSR ¶ 21.) Furthermore, the multiple commonalities discussed above "more than suffice" to overcome any alleged temporal "gap" and support the court's relevant conduct determination. *Baines*, 777 F.3d at 963–64 (rejecting defendant's temporal gap argument as "hollow" because the offenses were connected by "multiple common factors")

Robey's remaining arguments assert that the additional vehicles did not arise from "the same course of conduct," § 1B1.3(a)(2) n.9(B). However, we need not address these arguments because as discussed, the court's relevant conduct

determination was adequately based on a finding of a "common scheme or plan," § 1B1.3(a)(2) n.9(A). *See* § 1B1.3(a)(2) n.9(B) ("Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct.").

Therefore, the district court did not commit clear error.

### III. CONCLUSION

For the foregoing reasons, Robey's conviction and sentence are AFFIRMED.