In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-3505

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DEMONTAE BELL,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:15-cr-10029-JES-JEH-1 — **James E. Shadid**, *Judge*.

ARGUED APRIL 4, 2019 — DECIDED JUNE 3, 2019

Before RIPPLE, HAMILTON, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Mark Turner persuaded Demontae Bell to help him sell several stolen firearms. When Turner later ran into trouble with the law, he cooperated with law enforcement, provided information about the sale, and aided the government in targeting Bell. As a result, Bell was arrested.

Upon Bell's arrest, an officer opened Bell's flip phone and viewed a photograph of a firearm on the home screen in what

was likely an unconstitutional search. Yet the district court declined to suppress the evidence obtained from the phone because the government subsequently obtained valid search warrants for it. Bell challenges this suppression decision on appeal. Bell also argues that his statutory and constitutional rights to a speedy trial were violated due to continuances granted by the district court and the nearly two-year delay between his indictment and trial.

We conclude that the search warrants were supported by probable cause and that Bell's speedy trial rights were not violated. We therefore affirm.

## I. Background

On November 6, 2014, Mark Turner robbed his coworker's home. He stole two AR-15 rifles, one AK-47 rifle, one Glock pistol, and a rifle that he later discovered was a pellet gun. Turner then brokered a deal with the defendant in this case, Demontae Bell. If Bell helped Turner sell the guns, he could keep some of the proceeds. Turner and Bell sold three of the guns in exchange for drugs and money. As part of his compensation, Turner gave Bell a good deal on the two unsold guns—the AK-47 and the pellet gun.

Turner was later arrested on charges related to manufacturing methamphetamine. He agreed to cooperate with law enforcement and confessed to stealing the firearms from his coworker's home. Turner stated that he sold them to a drug dealer known to him as "Jay" in exchange for money and cocaine. The FBI and Peoria, Illinois police then targeted "Jay" (who turned out to be Bell), attempting to recover the AK-47.

Turner and his girlfriend engaged in two controlled drug transactions targeting Bell on February 13, 2015, and February 25, 2015. Both transactions were audio- and video-recorded.

FBI Special Agent Jason Nixon showed a portion of the video recording and a photograph of the first controlled transaction to an inmate at the Peoria County Jail. The inmate identified the person in the video as Bell, who also went by "Tay Tay." Agent Nixon then obtained a prior booking photo of Bell, removed all identifying information, and showed it to Turner. Turner identified Bell as Jay.

During the second controlled transaction, Bell revealed to Turner that the gun they believed to be the "sniper rifle" was, in fact, a pellet gun. Turner then asked whether Bell had "extra clips and bullets for that m****r-f****r." This exchange was about the AK-47. Turner went on to state that you can "modify clips" and that for "[s]ome of the A-Ks you can put the round" that "fires like a hundred shots."

Turner told Bell that he knew of someone who might be able to supply some clips but that the individual needed more information about the gun: "He's like, 'You need to find out what it is. He's like, 'Even if you find out the name, or what it looks like.'" Bell responded: "I got a picture of the m****r-f****r right here" and handed his cellphone to Turner. Turner asked Bell to send the photo to him and provided his phone number. Bell responded: "Send this to ya."

After the transaction, Turner showed Agent Nixon a photo of an AK-47 on his phone, which he said Bell had texted to him. Agent Nixon took a photo of that firearm picture on Turner's phone. The photo Agent Nixon took did not indicate

that the firearm picture had been sent to Turner by text message or who had sent it.

As a result of the investigation, on April 9, 2015, Peoria police arrested Bell for being a felon in possession of a firearm, 18 U.S.C. § 922(g), namely, the AK-47. Upon his arrest, Peoria police seized Bell's flip phone. Police Officer Justin Sinks opened the phone, and its home screen showed a photo of an AK-47.

On April 17, 2015, Agent Nixon applied for a warrant to search Bell's cellphone. Among other things, the supporting affidavit recounted that after the second controlled transaction Turner had shown Agent Nixon the photo of an AK-47 that Bell had sent him via text message. The affidavit also stated that Officer Sinks had seen a photo of an AK-47 on the home screen of Bell's cellphone subsequent to his arrest. A federal district judge granted the warrant. Law enforcement executed the warrant to search the phone and found a photo of an AK-47 on it. The burglary victim identified the gun as his.

On October 20, 2015, Agent Nixon sought a second warrant to extract electronically stored data from Bell's cellphone, specifically metadata on photo files. The supporting affidavit again recounted Agent Nixon's viewing of the photo after the controlled transaction but did not discuss Officer Sinks's search of the phone. The affidavit also stated that a search of the phone pursuant to the first warrant had turned up the photo of the AK-47. A magistrate judge approved the warrant and law enforcement executed it. The metadata from the photo of the AK-47 showed that it was taken on November 7, 2014, and that it had been texted to Turner's phone number.

Prior to trial, Bell moved to quash his arrest warrant and to suppress the evidence obtained from his cellphone. Bell argued that Officer Sinks had unconstitutionally searched his flip phone by opening it to view the home screen. Without the information from Officer Sinks's unconstitutional search, Bell asserted, the April 2015 warrant lacked probable cause. Bell argued that the October 2015 warrant was similarly deficient, and that the photo obtained pursuant to the first warrant was impermissibly used as support for the second.

The district court agreed with Bell in part and concluded that Officer Sinks had violated the Fourth Amendment by searching Bell's cellphone in the absence of exigent circumstances. But the district court determined that, even omitting the information obtained from Officer Sinks's illegal search, the April 2015 warrant was supported by probable cause. The district court also concluded that there was an independent source for the photo; during the second controlled transaction, Bell sent it to Turner via text message and Agent Nixon subsequently viewed it. The second search warrant, the district court said, was likewise supported by probable cause, including with information obtained from executing the first search warrant. The district court therefore denied the motion to suppress the photo evidence. It denied the motion to quash the arrest warrant for similar reasons.

Bell also moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), challenging the affidavits supporting his arrest warrant and the two search warrants. Because it found no intentional or reckless misrepresentations or omissions impacting the probable cause determination, the district court denied Bell's motion.

Some months after filing these pretrial motions, Bell moved to dismiss the indictment against him, arguing that his speedy trial rights had been violated. Specifically, Bell noted that the district court had granted a government motion to continue his July 2015 trial date and improperly excluded from the speedy trial clock the time between the July 22, 2015 continuance and the new trial date in September 2015. The district court denied the motion to dismiss, observing that it had appropriately excluded this period to serve the ends of justice. The district court went on to calculate all elapsed periods under the 70-day clock, noting it had excluded all time except from June 8 to June 15, 2016, and August 26 to 31, 2016. But because motions were pending during these periods, the district court excluded them from the calculation. Therefore, according to the district court, there had been no violation of the Speedy Trial Act.

In March 2017, Bell proceeded to a three-day bench trial and was convicted on all counts. Bell moved for a new trial, making multiple arguments including that the district court violated his speedy trial rights and erred in admitting evidence obtained from his cellphone. The district court denied the motion and sentenced Bell to 160 months' imprisonment and three years of supervised release.

## II. Discussion

Bell makes two challenges on appeal. The first is to the district court's failure to suppress the evidence obtained from his cellphone. The second is that his statutory and constitutional speedy trial rights were violated. We affirm on both.

## A. Fourth Amendment Claim

Bell contends that the district court erred in admitting the evidence found on his cellphone, namely, the photo of the AK-47 and the electronic data tied to it. He argues that without the photograph of the AK-47 obtained from Officer Sinks's illegal search of the phone, Agent Nixon would not have established probable cause to obtain the first search warrant. And without the evidence found as a result of the first search warrant, the government could not have obtained the second warrant.

The district court agreed with Bell that Officer Sinks's search violated the Fourth Amendment, and the government has not contested that conclusion in earnest before us. *See Riley v. California*, 573 U.S. 373, 401 (2014) (holding that a warrant is generally required to search a cellphone, even when the phone is seized incident to arrest). For present purposes, we accept that the search was illegal without addressing it further.

The district court concluded, however, that even absent information about Officer Sinks's search and the photograph found on the home screen of Bell's flip phone, under the independent source doctrine, the first search warrant affidavit provided probable cause to believe evidence of a crime would be found on Bell's phone. Additionally, law enforcement would have eventually discovered the photo of the AK-47 regardless of Officer Sinks's search. We review these legal conclusions *de novo* and relevant factual findings for clear error. *United States v. Rainone*, 816 F.3d 490, 495 (7th Cir. 2016).

The independent source doctrine permits the admission of "evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source*." Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). "[T]he central question under the independent source doctrine is whether the evidence at issue was obtained by independent legal means." *United States v. May*, 214 F.3d 900, 906 (7th Cir. 2000).

As an initial matter, there was an independent source for admitting the photo itself. Even before obtaining the April 2015 search warrant, Turner had provided Agent Nixon with the photo of the AK-47. After the February 25, 2015 controlled transaction, Turner told Agent Nixon that Bell had texted him a photo of the stolen AK-47, and Turner showed Agent Nixon that photo. Agent Nixon then confirmed that, in the recording of this transaction, Bell told Turner that he had a photo of the AK-47 on his phone and texted that photo to Turner. All of this occurred before Officer Sinks's illegal search. Agent Nixon's discovery, therefore, constitutes a lawful, independent source for the photo (albeit without any of the electronic data extracted from Bell's phone) and would make its suppression inappropriate. *See United States v. Gravens*, 129 F.3d 974, 982 (7th Cir. 1997).

In addition to this lawful discovery, the government subsequently obtained search warrants to extract the photo and related data from Bell's phone. Although the first search warrant affidavit included the tainted information, under the independent source doctrine, when a search warrant is obtained, in part, with tainted information, we ask two questions. First, would the warrant have been issued even without considering the tainted information? And, second, was the officer's decision to seek the warrant prompted by the illegal

search? *United States v. Etchin*, 614 F.3d 726, 737 (7th Cir. 2010); *see also United States v. Scott*, 731 F.3d 659, 664 (7th Cir. 2013).

To answer the first question, we consider the April 2015 supporting affidavit without the information detailing Officer Sinks's illegal search. Putting aside this information, the supporting affidavit "contained an array of other facts" sufficient to establish probable cause, including facts from the two controlled transactions that the FBI audio and video recorded. *Scott*, 731 F.3d at 666. The affidavit:

- described the types of guns stolen;

- explained that the burglary victim identified the confidential informant (who we know was Turner) as a likely suspect;

- explained that Turner confessed to the burglary and agreed to cooperate;

- described that a witness identified Bell as the person in the video of the first controlled transaction, and that Turner identified Bell via photo as the person to whom he had sold firearms;

- explained that, during the second recorded controlled transaction, Bell and Turner discussed Turner's "attempts to locate magazines for the stolen AK-47 rifle" and that "Bell advised [Turner] he had a photo of the AK-47 and offered to send the photo to [Turner] via text message from his cellphone";

- noted that Turner, in fact, received the photo of the AK-47 from Bell; and

- explained that, after the transaction, Turner showed the photo to Agent Nixon.

Bell takes issue with the last point—Agent Nixon's viewing of the photo of the AK-47. Bell points out that Agent Nixon took a photo of Turner's phone showing the photo of the AK-47, but that photo did not indicate that the AK-47 photo was sent via text or that it was sent by Bell. In theory, Bell argues, Turner could have already had that photo on his phone. But the standard here is not certainty that evidence will be found. "Indeed, a probable cause determination requires only a probability of criminal activity, not an actual showing of it." *Scott*, 731 F.3d at 666. Agent Nixon reasonably believed that the photo he viewed was the one Bell had texted Turner, and his belief was supported by the recording of the second controlled transaction. It was, therefore, appropriate for the issuing judge and the district court to consider Agent Nixon's viewing of the photo in making their probable cause determinations.

Bell also notes that the affidavit relies heavily on information provided by an unnamed informant, Turner, yet insufficient information is provided from which to evaluate Turner's credibility. We examine whether an informant's information can supply probable cause under a totality of the circumstances approach, focusing on: "(1) the level of detail, (2) the extent of firsthand observation, (3) the degree of corroboration, (4) the time between the events reported and the warrant application, and (5) whether the informant appeared or testified before the magistrate." *United States v. Musgraves*, 831 F.3d 454, 460 (7th Cir. 2016) (internal quotation marks omitted).

Applying the totality of the circumstances test here, we look to the information included in the affidavit. The affidavit made clear that Turner had firsthand knowledge of the relevant events. The burglary victim corroborated Turner's account of the burglary. And Turner's and Bell's statements during the controlled transactions were recorded and supported the information Turner conveyed to law enforcement. Turner began cooperating shortly after the crime occurred in November 2014, the controlled transactions were executed in February 2015, and Bell was arrested and the first search warrant was issued in April 2015. The case proceeded promptly, and no significant time had passed which might otherwise call into question Turner's ability to remember events. And although Turner did not testify before the issuing judge, the affidavit provided sufficient information from which to assess Turner's credibility; it revealed that Turner had been arrested for a methamphetamine offense, that he had robbed his coworker, that he had engaged in an illegal firearms sale, and that he was cooperating with police pursuant to a proffer agreement. We conclude that, absent the tainted information, the affidavit provided probable cause to believe evidence of the stolen firearms would be found on Bell's cellphone.

Having addressed the first question in the independent source inquiry, we turn to the second question, whether Agent Nixon would have sought a warrant to search Bell's phone absent Officer Sinks's search. The answer to the first part of the inquiry is relevant to the second—once an officer has probable cause to believe a piece of property contains evidence of a crime, it is hard to see how an additional illegal search would alter the officer's desire to examine the property. *See Etchin*, 614 F.3d at 737.

We agree with the district court that law enforcement would have sought a warrant regardless of the illegal search. The recording of the second controlled transaction makes clear that Bell had a photo of the AK-47 on his phone. Agent Nixon was aware of this recording and Turner showed Agent Nixon the photo in question. It is, therefore, hard to believe that Agent Nixon would not have sought a warrant to search the phone absent Officer Sinks's discovery. True, Agent Nixon sought the search warrant only about a week after Officer Sinks's search, despite the recording taking place over a month earlier. In some cases, a warrant's temporal proximity to an illegal search could support the inference that the search prompted the warrant. That proximity is not dispositive here as there are other inferences that could be made. Perhaps, for example, Agent Nixon had been waiting for Bell's arrest to avoid serving Bell with a warrant and alerting him to the investigation. We conclude that both parts of the independent source test have been met here, and that the district court correctly denied Bell's motion to suppress.

For the same reasons that evidence obtained from the first search warrant need not be suppressed, neither does evidence from the second warrant need to be. The October 2015 supporting affidavit also detailed the recording of the controlled transaction and the discussion of the photo on Bell's phone, which alone established probable cause, along with explaining that the first search had, in fact, produced the photo of the AK-47.

In a final effort to attack the search warrants, Bell asks us to remand for a *Franks* hearing, which the district court refused to grant. Per *Franks*, a defendant is entitled to an evidentiary hearing when he "makes a substantial preliminary

showing that the police procured a warrant to search his property with intentional or reckless misrepresentations in the warrant affidavit and such statements were necessary to a finding of probable cause." *United States v. Kienast*, 907 F.3d 522, 531 (7th Cir. 2018). We review the district court's decision for clear error, reviewing *de novo* any legal determinations that factored into the decision. *United States v. Daniels*, 906 F.3d 673, 676 (7th Cir. 2018) (per curiam).

To succeed, Bell must identify specific omissions or misrepresentations in the affidavit; "negligent or innocent mistakes" are not enough. *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013). The omissions Bell cites are ones we have already addressed, that the supporting affidavit for the April 2015 search warrant: (1) did not provide all relevant information about Turner's credibility; (2) failed to explain that Agent Nixon did not actually view any text message Bell sent to Turner after the second controlled transaction; and (3) did not provide enough context to make clear that Officer Sinks's search was unlawful.

Bell did not raise the second and third arguments in his motion for a *Franks* hearing in the district court, and the government argues that these arguments are forfeited, if not waived. We need not reach the government's forfeiture argument, because under any standard of review Bell's challenge fails. As we have already noted, the issuing judge was sufficiently aware of the reasons to doubt Turner's credibility. Although Turner committed crimes additional to those recounted in the affidavit, those occurred after the April 2015 warrant was issued. *See Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009) (noting that, generally, "[i]nformation that emerges after the warrant is issued has no bearing" on

the probable cause analysis). We are skeptical that any potential omissions or misrepresentations about Agent Nixon's viewing of the AK-47 photo or about Officer Sinks's search were intentional or reckless. Regardless, for the reasons described above, the supporting affidavit established probable cause even without this information.

Bell cites additional misrepresentations in the affidavit in support of the second search warrant: Officer Sinks's illegal search is entirely omitted and Turner's additional arrest, which had occurred by that time, is unmentioned. By October 2015, however, when the second affidavit was submitted, the photo of the AK-47 had already been found on Bell's cellphone as a result of the first search warrant. The omitted information was not necessary to establish probable cause. Therefore, we cannot say that the district court clearly erred in denying a *Franks* hearing.

**B. Speedy Trial Claim**

Bell makes two speedy trial challenges: one under the Speedy Trial Act, and one under the Sixth Amendment.

**1. Speedy Trial Act**

The Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.*, requires that a defendant's trial begin within 70 days of the defendant's indictment or first appearance, whichever comes later. 18 U.S.C. § 3161(c)(1); *United States v. Patterson*, 872 F.3d 426, 433 (7th Cir. 2017). The Act provides for certain time periods to be excluded from the 70-day clock, including continuances granted to serve the ends of justice, 18 U.S.C. § 3161(h)(7)(A), delays due to a witness's unavailability, *id.* § 3161(h)(3), and time during which a pretrial motion is pending, *id.* § 3161(h)(1)(D).

We review a district court's interpretation of the Act *de novo*, and its decisions to exclude time for abuse of discretion. *United States v. Robey*, 831 F.3d 857, 861 (7th Cir. 2016). "Absent legal error, we will reverse the district court's decision to exclude time only where the defendant can show both an abuse of discretion and actual prejudice." *United States v. Ramirez*, 788 F.3d 732, 735 (7th Cir. 2015).

Bell first challenges the period of time excluded after the district court granted a continuance at the July 22, 2015 status conference. By that time, 58 unexcluded days had elapsed since the original felon-in-possession indictment.[1] The government filed a superseding indictment the day prior to the

---

[1] We calculate time under the 70-day clock in accordance with Federal Rule of Criminal Procedure 45, as we have done before and as other circuits do. *See United States v. Garrett*, 45 F.3d 1135, 1138 n.1 (7th Cir. 1995); *United States v. Montoya*, 827 F.2d 143, 147 n.4 (7th Cir. 1987); *see also United States v. Mallett*, 751 F.3d 907, 913 (8th Cir. 2014); *United States v. Marshall*, 669 F.3d 288, 290 (D.C. Cir. 2011). Although the Supreme Court has recognized that previous versions of Rule 45 did not expressly apply to statutes and did not comport with common-law time calculations, *United States v. Tinklenberg*, 563 U.S. 647, 661 (2011), the current version of the Rule, and the one in place throughout Bell's arrest and trial, does both. Fed. R. Crim. P. 45(a).

For continuances, Rule 45(a) and the Supreme Court count from the day after the case is continued to the date of the next appearance. *See Zedner v. United States*, 547 U.S. 489, 495 (2006) (counting January 31, 1997 to May 2, 1997, as a 91-day period). For motions that are filed and remain pending, the Supreme Court and the Seventh Circuit count from and including the date the motion was filed through and including the date it was resolved. *See Bloate v. United States*, 559 U.S. 196, 201 (2010); *Blake v. United States*, 723 F.3d 870, 886–87 (7th Cir. 2013). This calculation is inconsistent with Rule 45(a) but is provided for in the Speedy Trial Act. 18

conference, alleging four new counts. Bell made his first appearance on the new counts at the conference; therefore, the clock had not yet begun to run on those new counts. To establish a violation on the felon-in-possession count, Bell must show that more than 12 additional days of unexcluded time passed. *See United States v. Trudeau*, 812 F.3d 578, 587 (7th Cir. 2016) ("In the Speedy Trial Act context, a superseding indictment restating or correcting original charges does not restart the seventy-day clock.") (internal quotation marks omitted). For all other counts, he must show that more than 70 days of unexcluded time passed.

Immediately before the conference, the government provided defense counsel with approximately 1,000 pages of new discovery materials and eight hours of recordings and indicated there were discovery materials still to come. Despite the onslaught of new material, defense counsel stated that the defendant wished to proceed with the scheduled trial date set for five days later, on July 27, 2015, demanding his right to a speedy trial.

Given the significant amount of new discovery and the fact that there were only five days until the scheduled trial date, the district court wisely questioned whether defense counsel could adequately prepare for trial. Bell maintained that he wanted a speedy trial, and defense counsel said she would do her best to comply but reserved her right to move for a continuance depending on what was in the discovery and when she might be able to meet with Bell at the jail. The

---

U.S.C. § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion").

government, however, moved for a continuance, stating that it needed more than five days to prepare to try Bell on the new counts. The district court granted the continuance, rescheduling the trial for September 2015. It *sua sponte* raised that an ends-of-justice exclusion was appropriate, and excluded the time leading up to the new trial date.

Under the circumstances, the district court did not abuse its discretion by excluding this continuance from the speedy trial clock in the ends of justice. A superseding indictment with four new counts had just been returned and voluminous discovery provided. The new discovery materials were likely relevant to all counts, as they arose from a common set of facts. Defense counsel, and consequently Bell, would have been seriously disadvantaged had she been forced to prepare for trial on the new counts in a mere five days. There was ample reason to conclude that the failure to grant a continuance would deny defense counsel "reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv). A trial may be continued and time excluded over the defendant's objection, as long as the district court supplies proper reasoning on the record. *United States v. Asubonteng*, 895 F.2d 424, 427 (7th Cir. 1990); *see also Robey*, 831 F.3d at 862.

Nor has Bell shown that he was prejudiced by the continuance. The additional time counsel had to prepare likely advantaged Bell, and the continuance negated the need to sever the counts and duplicate efforts at two trials. *See Asubonteng*, 895 F.2d at 427; *see also United States v. Smith*, 308 F.3d 726, 736 (7th Cir. 2002) (noting, in the motion to sever context, that offenses should generally be tried together to preserve judicial

resources, unless there will be serious prejudice to the defendant).

Bell has challenged other periods of time as improperly excluded. But he did not raise objections to these periods in a motion to dismiss prior to trial. If a defendant moves to dismiss on Speedy Trial Act grounds below, but cites additional violations on appeal, review of the additional violations may be waived under the Act and "at the very least" are forfeited. *United States v. O'Connor*, 656 F.3d 630, 633–34 (7th Cir. 2011); *see* 18 U.S.C. § 3162(a)(2). Although we have recognized that the language of the Act and the Supreme Court's interpretation of it "strongly suggest[] that violations not specifically identified in the defendant's motion to dismiss are waived, not forfeited," we need not conclusively decide that issue here, because even if we were to apply plain error review under a finding of forfeiture, Bell cannot succeed. *See O'Connor*, 656 F.3d at 638 (citing *Zedner v. United States*, 547 U.S. 489, 502–03 (2006)).

Bell's first unpreserved challenge is to the time excluded after the district court rescheduled trial, which the district court did because Turner was under quarantine at the prison where he resided and thus unable to testify in person. Under the Act, a witness is considered unavailable and time excludable if "his whereabouts are known but his presence for trial cannot be obtained by due diligence." 18 U.S.C. § 3161(h)(3)(B). While the government established that Turner could have testified by video, he could not be physically present at trial. Bell himself maintained that he wanted to go forward with trial as scheduled and did not understand how Turner's non-presence would impact his trial. But defense counsel objected to Turner's testimony by video, noting

that he was a key witness and in-person cross-examination would be crucial to the case, and that there may be logistical difficulties in showing Turner exhibits, including video exhibits. This was a tactical decision "within counsel's province," and counsel did not require Bell's consent. *United States v. Hills*, 618 F.3d 619, 628 (7th Cir. 2010). The district court relied on defense counsel's representations, continued the trial, and excluded the time until the new trial date because Turner was unavailable per § 3161(h)(3). The district court did not plainly err in doing so, because it is not "clear or obvious," *United States v. Freed*, 921 F.3d 716, 720 (7th Cir. 2019), that Turner was "available" so as to satisfy the right to confrontation. *See, e.g.*, *United States v. Walker*, 673 F.3d 649, 657 (7th Cir. 2012) ("The Confrontation Clause guarantees an opportunity for a thorough and effective cross-examination … .").

Bell also notes the district court's failure to exclude periods in June and August of 2016, arguing that these periods added to the 70-day clock. But pretrial motions were pending during these periods; therefore, these time periods were automatically excluded. 18 U.S.C. § 3161(h)(1)(D); *Hills*, 618 F.3d at 625–27; *see also Bloate v. United States*, 559 U.S. 196, 206 (2010). Bell notes that the motions were "in abeyance" during this period, pending plea negotiations. While that is true, the motions were not withdrawn or resolved. When new counsel was appointed, he was able to adopt the motions without any refiling, which further shows that the motions remained pending. Time is excluded "from filing of the motion through the conclusion of the hearing on," and there had not yet been a conclusion to the motions. 18 U.S.C. § 3161(h)(1)(D). Accordingly, Bell's argument that these two periods should be added to the speedy trial clock fails.

Because Bell cannot point to any time that was improperly excluded, the clock remained at 58 days for the felon-in-possession count and zero days for all other counts. We therefore affirm the district court's conclusion that Bell's rights were not violated under the Speedy Trial Act.

### 2. Sixth Amendment

Bell also asserts a challenge under the Sixth Amendment right to a speedy trial. U.S. Const. amend. VI. Typically, we review a district court's denial of a constitutional speedy trial claim *de novo* and its factual findings for clear error. *Patterson*, 872 F.3d at 434.

In the district court, Bell never specified whether his speedy trial challenge was made under the Speedy Trial Act or the Sixth Amendment. The government argues that Bell has therefore forfeited this claim, and we must review it only for plain error. We have hesitated before to find that a defendant has forfeited his Sixth Amendment speedy trial right. *See United States v. Oriedo*, 498 F.3d 593, 596 & n.2 (7th Cir. 2007). We likewise hesitate to do so here, where the defendant repeatedly asserted his right to a speedy trial on the record. Bell's Sixth Amendment claim, however, falls short no matter what standard we apply.

When assessing whether a defendant's Sixth Amendment speedy trial right has been violated, we consider four factors: "(1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) any prejudice the defendant suffered by the delay." *Hart v. Mannina*, 798 F.3d 578, 596 (7th Cir. 2015) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

The first element is met here; a delay greater than one year is "presumptively prejudicial." *O'Connor*, 656 F.3d at 643. As is the third element—Bell (personally and through counsel) repeatedly made known his desire for a speedy trial.

Turning to the other elements, we attribute to the defendant delay resulting from defense counsel's need to prepare. *Hills*, 618 F.3d at 630. A defendant's lack of cooperation with counsel and change of counsel will also be weighed against the defendant. *See Robey*, 831 F.3d at 864. Although the government was responsible for the delay resulting from the continuance described above, almost all other delay was due to defense pretrial motions, at least five defense motions for continuances, and Bell's uncooperativeness with counsel and desire to change counsel. This factor weighs strongly against Bell.

Finally, we consider the last element, prejudice. "We examine prejudice resulting from a delay in trial in light of the interests the Sixth Amendment seeks to protect. The interests are (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *United States v. Harmon*, 721 F.3d 877, 883 (7th Cir. 2013) (citations and internal quotation marks omitted).

That Bell was incarcerated for a significant period before trial is one consideration that weighs in his favor. *See Hills*, 618 F.3d at 632; *Oriedo*, 498 F.3d at 600–01. But we also must consider whether the delay impaired Bell's defense. *Hills*, 618 F.3d at 632. When the delay is primarily attributable to the defendant, as is the case here, the defendant must make a specific showing of prejudice to make out a Sixth Amendment violation. *See id.*; *Oriedo*, 498 F.3d at 600–01. It is not enough to

allege generally that witnesses no longer clearly recalled events related to the case. *See Hills*, 618 F.3d at 632–33. If witnesses testify that the passage of time affected their memories, to show prejudice the defendant must show that there was some "specific testimony" that the "witnesses would have offered but were unable to offer by the time of trial" that would have helped the defense. *Id.* at 633.

Here, some trial witnesses, including Turner, expressed generally that they could no longer remember certain details due to the passage of time. Bell points to an agent who testified he could not remember when Bell first attracted his attention because it had been "two years since that case started"; the burglary victim, who testified that he was "having a really hard time remembering all of the details" regarding the firearms stolen from him, saying "it has been a while"; and to Turner, who was unable to answer defense counsel's question regarding the names of people involved in the relevant events, saying he "might have been able to remember a first name or a nickname two years ago, but not now."

None of these alleged lapses suffice to show prejudice here. Although the agent could not provide a specific answer, he did agree that Bell came to his attention shortly before the case began. The burglary victim was still able to recount the types of firearms stolen and the location in his home they were taken from. Bell has not explained what additional testimony these witnesses could have offered or how that testimony would have helped him. Nor has Bell explained how Turner being unable to recall the details of the sale of the stolen firearms prejudiced Bell. As the government's star witness, lapses in Turner's memory likely favored Bell. *See*

*O'Connor*, 656 F.3d at 643 (noting that memory lapses may be helpful in discounting a witness's credibility).

Because the delay here is primarily attributable to the defense and because Bell has not made a clear showing of prejudice, his Sixth Amendment claim fails.

### III. Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.