In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-1546

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BUDDY H. GUNTER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:19-cr-40064-SLD-2 — **Sara Darrow,** *Chief Judge.*

ARGUED DECEMBER 8, 2022 — DECIDED AUGUST 11, 2023

Before RIPPLE, ROVNER, and WOOD, *Circuit Judges.*

ROVNER, *Circuit Judge.* Following a criminal trial, Buddy
Gunter was found guilty of conspiracy to distribute metham-
phetamine, and sentenced to 300 months' imprisonment.
Gunter now appeals that conviction, arguing only that he was
denied his Sixth Amendment right to a speedy trial.

In February 2019, Buddy Gunter and his brother-in-law
Michael Grommet participated in multiple transactions as

part of a conspiracy to deliver methamphetamine. Those transactions included a controlled purchase of actual meth-amphetamine from Gunter by law enforcement agents. On September 17, 2019, a federal grand jury returned an indict-ment charging Gunter, Grommet, and others of conspiring to distribute and possessing with intent to distribute at least fifty grams of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.

Gunter was arrested on July 2, 2020, and the district court set an initial trial date of August 31, 2020. Gunter moved to continue the trial to allow time to prepare with his attorney and determine how to proceed. The court then continued the case for two months, setting a new trial date of October 26, 2020 and a pretrial conference on September 23. At that con-ference, Gunter's attorney requested another continuance, and the trial date was extended to November 2, 2020. In the meantime, the court had ordered a competency evaluation for Gunter's co-defendant Grommet, and on October 14, 2020, Grommet was found competent to proceed to trial. Because the trial was less than a month away, Grommet's attorney re-quested a continuance, which Gunter opposed. However, the court granted the request and continued the trial until Janu-ary 19, 2021. The next pretrial conference was in November 2020, but by that time all jury trials had been suspended through January 25, 2021 due to the COVID-19 pandemic, and the district court therefore set a trial date of February 2, 2021. A pretrial conference was held on December 16, 2020, at which time Gunter objected to a motion by co-defendant Grommet to delay the trial again. The district court continued the trial date to March 22, 2021. Even absent that motion by

Grommet, a continuance ultimately would have been necessary because of the pandemic-related suspension of jury trials through March 23, 2021.

Six days later, on December 22, 2020, Gunter filed a motion to sever his trial from the trial of Grommet. Although the motion was filed just days after the trial was again continued for a later date, he did not present any argument in that motion that a severance would protect his right to a speedy trial under the Sixth Amendment. Instead, the motion to sever the trial was based solely on the argument that Grommet had made statements to the police that incriminated Gunter. Gunter argued that severance was required because the use of those statements in the government's case-in-chief at trial would violate his Sixth Amendment right to confront witnesses as recognized in *Bruton v. United States*, 391 U.S. 123 (1968).[1] The government subsequently professed that it would redact the statements implicating Gunter at trial and, in light of that representation, the district court denied the motion to sever the trial.

At a pretrial conference in January 2021, Grommet again moved for a continuance and the trial court agreed to continue the trial from March 22, 2021 to April 19, 2021. Although Grommet again sought to continue the trial in March 2021, the district court denied that request. Approximately two weeks before the trial date, however, Grommet's attorney, an Assistant Federal Public Defender, unexpectedly passed away.

---

[1] In *Bruton*, the Supreme Court held that the Sixth Amendment right of a defendant to confront the witnesses against him was violated by the admission of a confession of a nontestifying codefendant which expressly implicated the defendant as a participant in the crime. *Id*. at 135–36; *United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003).

Days later the Federal Public Defender appeared at the pre-
trial conference to represent Grommet, but within a week he
filed a motion to continue the trial to allow the time necessary
to review the discovery in the case and prepare for the trial.
In his response to that motion for a continuance, Gunter ob-
jected to the continuance and also renewed his motion to
sever the trials if the continuance was granted. The district
court granted the continuance and, noting that the arguments
raised in the motion to sever had been resolved by the gov-
ernment's agreement to redact the statements, denied the re-
newed motion to sever. Approximately a week before trial,
Gunter moved to dismiss the indictment alleging a violation
of his Sixth Amendment right to a speedy trial. After briefing
and oral argument on that motion, the district court denied
the motion.

In determining whether the Sixth Amendment right to a
speedy trial was violated, courts consider four factors identi-
fied in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length
of the delay, (2) the reasons for the delay, (3) whether the de-
fendant asserted his right to a speedy trial, and (4) any preju-
dice the defendant suffered by the delay." *United States v. Bell*,
925 F.3d 362, 376 (7th Cir. 2019). The first and third factors are
not contested by the parties. As we have recognized, the first
factor which considers the length of delay "acts as a triggering
mechanism; we only conduct a full analysis of all of the fac-
tors if a presumptively prejudicial amount of time elapsed in
the district court." *United States v. Patterson*, 872 F.3d 426, 435
(7th Cir. 2017); *Barker*, 407 U.S. at 530. The criminal trial in the
district court began approximately 23 months after Gunter's
indictment, which the parties agree is a long enough period
of time to trigger inquiry as to the other speedy trial factors.
And although Gunter first moved to dismiss the indictment

on the basis of his Sixth Amendment right to a speedy trial only about a week before trial, he opposed motions for continuances and asserted his desire for a speedy trial at numerous times during the proceedings below, and therefore adequately asserted his right to a trial.

The parties disagree, however, as to the remaining factors—the reasons for the delay and whether Gunter suffered any prejudice from it. In the Sixth Amendment analysis, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. The Court recognized that deliberate attempts to delay the trial or impede the defense are weighted heavily against the government, whereas delays attributable to a more neutral reason, such as negligence or overcrowded courts, are still weighted against the government but less heavily. *Id*. On the other end, delays attributable to a valid reason such as a missing witness "should serve to justify appropriate delay." *Id*. The criminal case against Gunter was continued numerous times, but Gunter acknowledges that those delays could not be attributed to the government because they were continuances requested by Gunter or his codefendant. In fact, he states that "[w]hile there were several continuances before the trial court landed on the April 19, 2021 trial date, there would have been no speedy trial concern with that April setting. It was the four-month delay to August 16 that clearly violated Mr. Gunter's constitutional right." Therefore, his challenge is directed at the delay from the scheduled trial date of April 19 to August 16.

There is no question as to the cause of that delay in April 2021—it was caused by the unexpected death of Grommet's defense counsel two weeks before the April 19th trial date. After spending a week trying to get up to speed on the case

as well as cover other cases in place of the deceased attorney, the Public Defender informed the court that a continuance would be necessary as there would be no way to prepare for that multi-defendant trial within that short period of time. At least 45 days were needed to prepare, which required a continuance until June. The prosecutor, however, was scheduled to be on maternity leave from May 6 until August 2, and therefore the court continued the case to August 16 so as to allow continuity of counsel. That relatively modest additional delay allowed the government's counsel, who had engaged in all the trial preparation from the outset, to remain with the case. Gunter does not argue that the continuance could not be justified on that basis. Instead, he argues only that the court erred in refusing to sever the cases so that his case could proceed to trial on the April 19 date. We limit our review, then, to that claim.

In response to the request for a continuance following the death of Grommet's defense counsel, Gunter responded with a written statement opposing a continuance and stating, in the final paragraph: "Defendant Gunter further asserts if the Court deems it appropriate to Grant Defendant Grommet's Motion to Continue the trial, Defendant Gunter renews his prior Motion to Sever his Trial from Grommet's Trial and asserts he should be allowed to proceed to Trial on the currently scheduled date." Gunter now essentially argues that the court, in denying that request to sever his trial, denied his right to a speedy trial.

The court in addressing Gunter's renewed request for a severance, noted that the motion for a severance which Gunter requested to "renew" was based solely on a *Bruton* issue because Grommet had made a confession implicating Gunter,

and the motion was denied because the government resolved the *Bruton* issue by agreeing to redact Gunter's identity. Because that issue had been resolved, the court held that there was no longer any *Bruton* issue and severance was therefore no longer needed. The court then stated that Gunter "offers no legal support for a claim that there could be a severance based on the situation here today that doesn't involve *Bruton* or otherwise why his Speedy Trial rights … would be impacted in a specific way." The court accordingly determined that the trials should remain joined.

Gunter thus failed to raise an argument, with legal support, in the district court that severance of the trials was required in order to protect his right to a speedy trial. He sought to "renew" a prior motion for a severance, but that motion was not based upon any speedy trial concerns and raised only a *Bruton* concern. He now argues that in light of his opposition to the continuance based on his speedy trial rights, the court would have known that his severance request was based on his right to a speedy trial and not on the *Bruton* issue. But that contention is problematic. First, Gunter's sole basis for the severance was the statement that he was renewing the prior motion, thereby incorporating the basis of that prior motion which was solely a *Bruton* argument; although Gunter's trial date had already been continued over his objection multiple times prior to that first motion for a severance, he did not raise any argument in that motion that a severance was required to protect his right to a speedy trial. Moreover, Gunter provided no legal arguments whatsoever in his second motion for a severance. He merely stated that if the continuance was granted he renewed his earlier motion for a severance. Gunter relies on context alone to assert that the court should have

been aware that the renewed motion for a severance was actually a motion for a severance based on an entirely different ground—that of the need to protect his right to a speedy trial.

Even if the court could have understood the motion as requesting a severance to preserve his speedy trial right, Gunter failed to argue both in the district court and on appeal that severance was required to preserve his Sixth Amendment rights in light of the factors relevant to that inquiry. As to the factor regarding the reason for the delay, the reason for continuing the trial date was the sudden death of the counsel representing his co-defendant Grommet, and a continuance necessitated by a co-defendant is at best neutral, and not attributable to the government." Gunter appears to believe that if such a continuance could be avoided by a severance, the court is required to grant such a severance rather than continue the case. But not every continuance, even one attributable to the government, constitutes a violation of the Sixth Amendment. The constitutionality of the continuance must be assessed in light of all of the four factors, and Gunter never applies them at all, choosing instead to argue without legal citation that a severance is required if it could avoid a continuance.

That deficiency is particularly obvious as to the fourth factor, which considers any prejudice the defendant suffers from the delay. As the Supreme Court recognized in *Barker*, we examine prejudice resulting from the delay in light of the interests protected by the Sixth Amendment: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532; *Bell*, 925 F.3d at 376. Of those factors, the last one—the possibility of

impairment of the defense—is given the greatest weight. *Id.*; *Patterson*, 872 F.3d at 436. Although a delay greater than one year is "presumptively prejudicial" and therefore triggers further scrutiny, that presumed prejudice is relevant in the ultimate weighing of the factors but is "insufficient to carry a speedy trial claim absent a strong showing on the other *Barker* factors." *United States v. Oriedo*, 498 F.3d 593, 597, 600 (7th Cir. 2007); *Doggett v. United States*, 505 U.S. 647, 655–56 (1992). When the delay is primarily attributable to the defendant, the defendant must make a specific showing of prejudice in order to establish a Sixth Amendment violation. *Bell*, 925 F.3d at 376–77 (holding that the defendant's Sixth Amendment claim failed because the delay was primarily attributable to the defense and the defendant had not made a clear showing of prejudice).

Gunter made no argument, in the district court or in this court on appeal, that he experienced any prejudice from the delay, and no such strong showing of prejudice is obvious in the record. He never even alleges any possibility that the delay challenged here had any potential to impair his defense, let alone provide specific examples of such impact. The district court properly denied Gunter's motion to dismiss on Sixth Amendment speedy trial grounds.

The decision of the district court is AFFIRMED.